[No. F005136. Fifth Dist. Mar. 18, 1987.]

CHARLES BURROW et al., Plaintiffs, v.
KENNETH PIKE et al., Defendants and Respondents;
DEPARTMENT OF TRANSPORTATION, Claimant and Appellant.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and II.

386

**COUNSEL**

Richard A. Krimen, George S. Bjornsen, Paul Klein and Glenn F. Hunsinger for Claimant and Appellant.

Ibold & Anderson and Bonnie Kay McNeil for Defendants and Respondents.

## Opinion

HAMLIN, J.—

### Statement of the Case

On April 15, 1982, Charles Burrow (plaintiff) and Beverly Burrow[1] filed a complaint for damages against defendants Kenneth Pike as the operator and Parker & Sons Trucking as the owner of a truck which struck plaintiff while plaintiff was working for the State of California, Department of Transportation (appellant).

After first filing and then dismissing a petition to intervene in plaintiff's lawsuit based on appellant's payment to plaintiff of workers' compensation expenses,[2] appellant filed a notice of lien claim against any judgment entered in that action in favor of plaintiff (Lab. Code, § 3856, subd. (b)) for reimbursement of the same workers' compensation expenses paid. While plaintiff's lawsuit was pending, defendants' insurer, Western Carriers Insurance Exchange (Western), became insolvent. The California Insurance Commissioner (Commissioner) was appointed liquidator of Western's assets, and California Insurance Guarantee Association (CIGA) administered Western's obligations under its insurance policies. (Ins. Code, § 1063.2.)

Following trial in plaintiff's action for damages, the jury returned a verdict in favor of plaintiff against defendants in the amount of $75,000. Notwithstanding appellant's lien claim, the trial court entered judgment on the verdict for plaintiff against defendants in the reduced amount of $25,000 based on a stipulation between plaintiff and defendants that the workers' compensation credit was $50,000. Appellant appeals from that judgment, contending the trial court had no jurisdiction to determine the validity of appellant's lien claim or to affect appellant's right to reimbursement from plaintiff's damage award for workers' compensation expenses it had paid. We agree and will reverse the judgment.

### Procedural Background[3]

On December 21, 1983, appellant petitioned for leave to intervene in

---

[1] The judgment in favor of Beverly Burrow was not appealed and none of the alleged errors considered in this appeal affect Beverly Burrow's judgment.

[2] Labor Code section 3853.

[3] The facts underlying plaintiff's complaint for damages are not set forth because they are not relevant to the issues on appeal.

plaintiff's lawsuit based on appellant's payment of workers' compensation expenses to plaintiff. A few weeks later, defendants moved for summary judgment against appellant on the grounds that: (1) appellant had failed to file a claim with the Commissioner as required by Insurance Code section 1021, subdivision (a), and (2) appellant's claim is not a covered claim (a) under Insurance Code section 1063.1, subdivision (c)(3) because it is an obligation to the State of California; and (b) under subdivision (c)(7)(b) of that section in that appellant's claim is asserted by a person other than the original claimant and appellant's claim is by right of subrogation.

Appellant filed its notice of lien claim on August 9, 1984. One day later, and six days before the trial court granted defendants' motion for summary judgment against appellant, appellant filed a request for voluntary dismissal without prejudice of its complaint in intervention. Shortly before trial, defendants filed a motion for judgment on the pleadings as to appellant's claim of lien. That motion was based on the same grounds as earlier asserted in support of defendants' motion for summary judgment. Following a hearing on September 28, 1984, the trial court granted defendants' motion for judgment on the pleadings.

In the judgment on the jury verdict after trial, the trial court reduced the amount of plaintiff's recovery and allowed defendants to recover from appellant their costs incurred in discovery after appellant filed its complaint in intervention. The provisions of the judgment are set forth in the margin.[4]

DISCUSSION

I., II.*

. . . . . . . . . . . . . . . . . . . .

---

[4]"The jury having rendered its verdict against defendants, KENNETH J. PIKE and PARKER & SON TRUCKING, INC., and in favor of plaintiff, CHARLES BURROW, in the sum of $75,000.00 and in favor of plaintiff, BEVERLY BURROW, in the sum of $30,000.00, and the Workers' Compensation benefits credit having been deemed to be $50,000.00 by stipulation of counsel,

"IT IS ORDERED, ADJUDGED AND DECREED that plaintiff CHARLES BURROW have and recover from defendants, above-named, the sum of $25,000.00 and that plaintiff BEVERLY BURROW have and recover from the defendants, above-named, the sum of $30,000.00, both plaintiffs to recover from defendant cost of suit, interest to run on this judgment at the rate of 10% per annum from October 3, 1984 until paid.

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that defendants KENNETH PIKE and PARKER & SON TRUCKING have and recover from Intervenor, DEPARTMENT OF TRANSPORTATION, costs of suit in the amount of $4,865.52."

*See footnote on page 384, ante.

III.

*Judgment on the Jury Verdict*

By its notice of appeal, appellant purports to appeal from the judgment on the verdict in plaintiff's personal injury action against defendants. That judgment orders that plaintiff recover from defendants the sum of $25,000 (having been reduced from the $75,000 awarded by the verdict) plus interest and costs of suit. It also orders that defendants recover from appellant $4,865.52 costs of suit.

■ The reduction of the $75,000 awarded plaintiff by the jury's verdict necessarily rests upon (1) the trial court's "striking" of appellant's lien, and (2) the stipulation of plaintiff and defendants that the workers' compensation benefits credit be deemed to be $50,000.

We have already concluded there was no legal basis for the trial court's grant of defendants' motion for judgment on the pleadings against one not a party to the personal injury action, such as appellant. The record reveals no other possible basis for extinguishing or declaring invalid in whole or in part appellant's lien. The stipulation of plaintiff and defendants as to the amount of the credit for workers' compensation benefits plaintiff received provides no basis for reduction of the verdict. Appellant did not join in or approve that stipulation which directly affected its ability to enforce its claim of lien.

(2a) Defendants assert that appellant has no standing to appeal from the judgment on the jury verdict in favor of plaintiff because appellant is not a party aggrieved by that judgment within the meaning of Code of Civil Procedure section 902. That assertion ignores the effect of the the trial court's reduction of the amount of damages awarded by the verdict in rendering judgment. This award constitutes the res against which appellant had asserted its claim of lien for reimbursement of workers' compensation benefits paid plaintiff. The reduced amount of plaintiff's recovery was substantially less than the amount of appellant's asserted lien.

In *Bates* v. *John Deere Co.* (1983) 148 Cal.App.3d 40, 53 [195 Cal.Rptr. 637], the court pointed out: " 'Any party aggrieved' may appeal from an adverse judgment. (Code Civ. Proc., § 902.) It is generally held, however, that only parties of record may appeal. [Citations omitted.] In this instance, lienor initially filed a complaint-in-intervention and apparently was granted leave to intervene in plaintiff's action against Deere. On the opening day of

trial, however, lienor requested dismissal of its complaint and reverted to the status of lienholder. The trial court assented to lienor's request and the complaint was dismissed. A person who was a party, but by dismissal ceased to be, is without legal standing as a litigant or as an appellant. [Citations omitted.]

"Nevertheless, one who is legally 'aggrieved' by a judgment, as lienor here, may become a party of record and obtain a right of appeal by moving to vacate the judgment pursuant to section 663 of the Code of Civil Procedure. [Citation omitted.] '[One] thereby gains the right of appeal from an order denying [the] motion.' [Citation omitted.] Unfortunately, lienor made no such motion in this case. Consequently, it lacks standing to appeal."

The primary case on which the court in *Bates* v. *John Deere Co., supra,* relied was *County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730 [97 Cal.Rptr. 385, 488 P.2d 953], in which the Supreme Court approved a nonparty's use of a motion pursuant to Code of Civil Procedure section 663. The aggrieved party moved to set aside the judgment; thus the nonparty became a party to the action who could properly appeal from the denial of its motion. (*Id.* at pp. 736-738.) Here, appellant made no such motion. But we believe the facts in *County of Alameda* v. *Carleson, supra,* are distinguishable and the requirement of a motion to set aside the judgment as a condition to the right to appeal should not be applied in this case.

The nonparty California Welfare Rights Organization which had been aggrieved by the judgment in *County of Alameda* v. *Carleson, supra,* was affected only indirectly inasmuch as the judgment directed defendant Carleson to modify certain existing regulations which would result in loss of the nonparties' welfare benefits.

The instant case, however, is closer to the fact pattern of *Slaughter* v. *Edwards* (1970) 11 Cal.App.3d 285 [90 Cal.Rptr. 144] which, albeit a some-what older case, was not mentioned by the Supreme Court in *County of Alameda* v. *Carleson, supra.* In *Slaughter,* the plaintiffs had won a judgment against the defendant real estate broker and in a related but independent proceeding sought satisfaction of the judgment out of the Real Estate Education, Research and Recovery Fund. The defendant broker was not a party to the proceeding by which the plaintiff sought satisfaction of its judgment, since only the Real Estate Commissioner was required to be served. Never-theless, upon the commissioner's satisfaction of the plaintiff's judgment, the defendant's real estate license would be suspended until such time as he repaid the judgment to the fund with interest. The court observed initially "that the appellant's failure to participate in the matter below does not

deprive him of his right to appeal. [Citations omitted.]" (*Slaughter* v. *Edwards, supra,* at p. 291.) The court went on to state: ■ " '[A]ny person having an interest recognized by law in the subject matter of the judgment, which interest is injuriously affected by the judgment, is a party aggrieved and entitled to be heard upon appeal.' [Citations omitted.] The appellant's interest must be immediate, pecuniary, and substantial, and not a nominal or remote consequence of the judgment." (*Ibid.*)

In *Bates* v. *John Deere Co., supra,* 148 Cal.App.3d 40 the nonparty lien claimant sought to appeal from that portion of the jury verdict which found the employer, lienor's subrogor, 15 percent negligent, a finding which consequently reduced the amount of lienor's claim. Lienor's interest, therefore, in *Bates* v. *John Deere Co., supra,* was less immediate and less substantial than is the interest of appellant in this case. ■ Appellant's lien interest was directly and completely lost when the trial court erroneously granted defendant's motion for judgment on the pleadings *against* appellant. Thus we believe appellant is a party aggrieved under the rationale of *Slaughter* v. *Edwards, supra,* 11 Cal.App.3d 285, 291, since appellant's interest in the judgment on the verdict in plaintiff's personal injury action is "immediate, pecuniary, and substantial, and not a nominal or remote consequence of the judgment."

Our conclusion dictates that the judgment on the verdict be reversed. ■ However, in the interest of judicial economy, we will consider the effect of the objection defendants advance on appeal, i.e., they entered into the previously discussed stipulation to liability in reliance on the trial court's extinguishment of the lien.

Although appellant had earlier claimed by its complaint-in-intervention payment of workers' compensation benefits to plaintiff of approximately $66,000, plaintiff and defendants stipulated after the trial court extinguished appellant's lien that any judgment in favor of plaintiff would be reduced by $50,000. That stipulation prompted defendants to further stipulate to liability, leaving only calculation of damages for the jury. In doing so, defendants gave up the right to have the jury determine whether appellant, as plaintiff's employer, had been contributorily negligent and to reduce accordingly the amount employer could recover through its lien for benefits paid to plaintiff.

■ The concurrent negligence of an employer has been available as a defense in an injured employee's suit for damages against a third party tortfeasor since the decision of the California Supreme Court in *Witt* v. *Jackson* (1961) 57 Cal.2d 57 [17 Cal.Rptr. 369, 366 P.2d 641]. Moreover, the concur-

rent negligence of the employer is a defense which is sufficiently raised if asserted by the third party tortfeasor only in answer to the plaintiff's complaint, i.e., although a third-party tortfeasor may bring the employer into the lawsuit by way of a cross-complaint for indemnity, the tortfeasor is not obligated to do so. (*Tate* v. *Superior Court* (1963) 213 Cal.App.2d 238 [28 Cal.Rptr. 548]; Peyrat, Cal. Workers' Damages Practice (Cont.Ed.Bar 1985) Reimbursement, § 4.31, pp. 101-102.)

■ The record supports defendants' statement that they stipulated to liability on plaintiff's complaint in reliance upon the trial court's erroneous grant of judgment on the pleadings against appellant. Appellant was not present and did not participate in the trial. However, at the hearing on defendants' motion for judgment on the pleadings plaintiff's trial counsel summarized for the trial court evidence allegedly probative of appellant's concurrent negligence as plaintiff's employer, i.e., (1) an unrepaired chuckhole or defect in the highway which caused Pike's cigarettes and lighter to fall to the floor of his truck, requiring him to take his eyes from the roadway in order to pick them up, and (2) appellant's alleged failure to provide warning signs alerting traffic to road work or slower moving traffic ahead. Of course, there is no way this court can even attempt to make any assessment of the effect, if any, that evidence had on the jury's deliberations. However, since it is necessary in the instant case to order the trial court to vacate its void order granting defendants' motion for judgment on the pleadings, fairness requires that plaintiff and defendant be allowed the opportunity to withdraw from the stipulation entered into in reliance upon that ruling. Defendants should have the option of requesting a limited new trial on the single issue of appellant's concurrent negligence to defeat or diminish appellant's right to recover workers' compensation benefits paid to plaintiff.

Additionally, our conclusion that the judgment on the verdict must be reversed makes it arguably unnecessary to consider at all the merits underlying the trial court's decision. However, we cannot ignore the fact that the principal contentions on appeal address the merits and the merits must be addressed in any further proceedings in the trial court. Two judges, at least, have been persuaded that appellant, as an employer, should not be reimbursed for workers' compensation benefits paid to plaintiff because the tortfeasor's liability insurer has become insolvent and its obligations administered by CIGA. Judicial economy requires this court to decide these issues inextricably involved in any further proceedings.

In *E. L. White, Inc.* v. *City of Huntington Beach* (1982) 138 Cal.App.3d 366, 370 [187 Cal.Rptr. 879], the court explained the purpose underlying formation of CIGA as follows: "CIGA was established by the Legislature in

1969 to provide each member insurer with 'insurance against loss arising from the [member's] failure . . . [as] an insolvent insurer to discharge its obligations under its insurance policies.' (Ins. Code, §§ 1063, subd. (a), 119.5.) CIGA's membership includes numerous types of insurers admitted to transact insurance in California. Their authority to transact insurance is dependent upon their membership in CIGA. (§ 1063, subd. (a).) Membership responsibilities include making premium payments to CIGA when another insurer becomes insolvent. CIGA is then required to pay the obligations of that insolvent insurer. (§ 1063.5.) However, while CIGA does provide insurer insolvency insurance, it 'does not "stand in the shoes" of the insolvent insurer for all purposes.' [Citation omitted.]" (Fn. omitted.)

The particular provisions of Insurance Code section 1063.1 on which defendants relied in the instant case to defeat appellant's claim for reimbursement of workers' compensation benefits paid plaintiff are three:

"́. . . . . . . . . . . . . . . . . . .

"(c)(1) 'Covered claims' means the obligations of an insolvent insurer, including the obligation for unearned premiums, (i) imposed by law and arising out of an insurance policy of the insolvent insurer; (ii) which were unpaid by the insolvent insurer; (iii) *which are presented as a claim to the liquidator in this state or to the association on or before the last date fixed for the filing of claims in the domiciliary liquidating proceedings* [six months, see Ins. Code, § 1021]; (iv) which were incurred prior to, on, or within 30 days after the date the liquidator was appointed; (v) for which the assets of the insolvent insurer are insufficient to discharge in full; (vi) in the case of a policy of workers' compensation insurance, to provide workers' compensation benefits under the Workers' Compensation Law of this state and (vii) in the case of other classes of insurance if the policy is issued to a resident of this state or claim against an insured thereunder is made by a resident of this state.

"́. . . . . . . . . . . . . . . . . . .

"(3) 'Covered claims' shall not include any obligations of the insolvent insurer arising out of any . . . obligations to *any state* or to the federal government.

"́. . . . . . . . . . . . . . . . . . .

"(7) 'Covered claims' shall not include. . . (b) *any claim by any person other than the original claimant* under the insurance policy in his or her own name,

his or her executor, administrator, guardian or other personal representative or trustee in bankruptcy and shall not include any claim asserted by an assignee or *one claiming by right of subrogation,* except as otherwise provided in this chapter.

". . . . . . . . . . . . . . . . . ."

(Ins. Code, § 1063.1, italics added.) Defendants have argued appellant's claim was barred under the provisions quoted above because (1) appellant failed to file any notice of claim within six months after the date of the first publication of notice of liquidation, (2) appellant's claim was an obligation owed to a state, i.e., the State Compensation Insurance Fund, and (3) appellant's claim was not asserted by the original claimant but was, rather, a claim by right of subrogation.

■ Initially we believe that any failure by appellant to file a claim for reimbursement in the liquidation proceeding within six months after notice of such proceedings cannot defeat appellant's right to file a lien against any judgment recovered by plaintiff. Labor Code section 3862 provides the employer a right of recovery alternative to enforcement of its lien as follows: "Any employer entitled to and who has been allowed and has perfected a lien upon the judgment or award in favor of an employee against any third party for damages occasioned to the same employer by payment of compensation, expenses of medical treatment, and any other charges under this act, may enforce payment of the lien against the third party *or,* in case the damages recovered by the employee have been paid to the employee, against the employee to the extent of the lien, in the manner provided for enforcement of money judgments generally." (Italics added.)

Moreover, "[an] employer can apply for a lien in the employee's pending third party action at any time before satisfaction of judgment. Lab C §§ 3857-3858; [further citation omitted]. Thus, an application for a lien can be made after the statute of limitations has barred the employer from bringing an independent action . . ., or after the entry of judgment has barred the employer from intervening . . . ." (Peyrat, Cal. Workers' Damages Practice, *supra,* Reimbursement, § 4.32, p. 102.) Defendants' motion for judgment on the pleadings attacked appellant's claim of lien, a claim asserted not directly against CIGA or the assets of defendants' insolvent liability insurer but directly against any recovery *plaintiff* might obtain. Since this lien can statutorily be filed any time before satisfaction of judgment, we reject defendant's contention that the lien was defeated by appellant's failure to file a claim in the liquidation proceeding within six months after notice.

■ More difficult, however, is defendants' contention that appellant's lien is barred by the statutory exclusion from covered claims of those claims asserted by any person other than the original claimant, in this case plaintiff, or of claims asserted by right of subrogation. It is a common assumption that "[a]n employer who has paid workmen's compensation to an employee injured by a third party tortfeasor is subrogated to the employee's right of action against the tortfeasor." (7 Witkin, Summary of Cal. Law (8th ed. 1974) Equity, § 125, p. 5344.) However, as Peyrat points out in California Workers' Damages Practice: "An employer's right to reimbursement has been characterized as 'more nearly an independent right to indemnity from the third party than a subrogation right entwined with the rights and interests of the employee.' [Citations omitted.] . . . [T]he employer's cause of action derives from Lab C section 3852 rather than from the employee's common law right of action for damages, and is essentially a statutory action for indemnity to recover from the tortfeasor the 'damage' that the employer has sustained as the result of the third person's tort. [¶] Whether or not reimbursement is an indemnity right, reimbursement statutes must be construed consistently with principles of equitable subrogation. [Citation omitted.]" (Peyrat, Cal. Workers' Damages Practice, *supra,* Reimbursement, § 4.5, p. 78.)

Thus, on their face the provisions of the enabling legislation, i.e., Insurance Code section 1063.1, subdivision (c)(7), suggest defendants are correct in asserting that appellant's claim is outside the scope of the statute. However, to accept that assertion would ignore not only a basic procedural point but also a more important policy consideration. As discussed above, appellant in asserting its lien claim can enforce the claim against the third party after judgment or directly against the plaintiff. "No hearing on an application for a lien should be requested until after judgment has been rendered. [Citation omitted.]" (Peyrat, Cal. Workers' Damages Practice, *supra,* Reimbursement, § 4.32, p. 103.) This principle is consistent with Civil Code sections 2881 and 2882. As appellant has pointed out, its lien in the instant case is one arising by operation of law (Civ. Code, § 2881), which does not arise "until the time at which the act to be secured thereby ought to be performed." (Civ. Code, § 2882.) This act is, of course, reimbursement of appellant from the fund created by the verdict awarding plaintiff damages from defendants.

Thus, in the instant case, putting aside for the moment the trial court's erroneous extinguishment of appellant's lien, defendants, whose liability insurance was being administered by CIGA, owed plaintiff a judgment of $75,000, subject to appellant's lien. Obviously, if appellant attempts to enforce its lien directly against defendants, CIGA would have a direct interest in asserting its alleged statutory inability to pay appellant's claim.

If, however, appellant waits as it is entitled to do until the amount of the money judgment passes into plaintiff's hands, CIGA would have to assert the statutory limitations as a stranger to the enforcement proceedings between appellant and plaintiff. On the other hand, if plaintiff challenged appellant's lien based on CIGA's statutory limitations, plaintiff would be placed in the position of attempting to secure for himself a double recovery to which he is not entitled.

Apart from this procedural peculiarity which renders reimbursement of workers' compensation benefits to the employer or its compensation carrier significantly different than the more traditional action in subrogation, a more fundamental policy distinction also militates against the construction of Insurance Code section 1063.1 advanced by defendants. Although Insurance Code section 1063.1, subdivision (c)(3) excludes obligations to any state from the class of covered claims CIGA is obligated to pay, and subdivision (c)(7) excludes claims asserted by right of subrogation, the discussion to follow is equally applicable to either subdivision when the "subrogee" is a state agency and when the injured employee has consequently recovered workers' compensation benefits from the State Compensation Insurance Fund.

Defendants rely principally upon *E. L. White, Inc.* v. *City of Huntington Beach, supra,* 138 Cal.App.3d 366. In that case, E. L. White, Inc. (who was insured by Royal Globe Insurance Company) and the City of Huntington Beach were found jointly and severally liable in a wrongful death action. Royal Globe paid White's share of the judgment and sought indemnification from Huntington Beach. Huntington Beach had carried excess liability insurance, but the liability carrier had become insolvent and its assets were then administered by CIGA. The court barred Royal Globe, subrogee of E. L. White, Inc., from seeking indemnity from Huntington Beach on the following rationale: "If Huntington Beach was required to indemnify Royal Globe for the wrongful death judgment and CIGA assumed Reserve's insurance obligation to Huntington Beach, the result would be the same as if CIGA made direct payment to Royal Globe, an action expressly proscribed by section 1063.1. The fact that the payment would go from CIGA to a subrogated insurer through the conduit of an insured of an insolvent insurer does not sanitize the transaction. Such is merely an artifice aimed at circumventing the clear command of the Legislature.

"On the other hand, if CIGA did not pay Huntington Beach after it had been ordered to indemnify Royal Globe, Huntington Beach would be forced to satisfy the judgment from its own assets. This is equally objectionable, because the overriding purpose of the Legislature in creating CIGA was to

protect just such a party as Huntington Beach, the insured of an insolvent insurer." (*Id.* at p. 371.)

The court then went on to explore the legislative policy underlying the creation of CIGA which warranted the exclusion of claims based on the right of subrogation from claims CIGA was obligated to pay. The court relied heavily upon the decision in *California Union Ins. Co.* v. *Central National Ins. Co.* (1981) 117 Cal.App.3d 729, 734 [172 Cal.Rptr. 863), where the court stated: "Shortly after the creation of the association in 1969, the then Commissioner of Insurance wrote, 'The creation of the California Insurance Guarantee Association provides the insured public of the State of California with an additional protection by which those persons injured now have the assurance that their claims will be paid, notwithstanding the fact that their claims may be against an insolvent company. . . .'

"The Legislature chose to provide a limited form of protection for the public, not a fund for the protection of other insurance companies from the insolvencies of fellow members. In comments upon a similar provision, excluding from coverage the claims of other insurers by subrogation or otherwise, the drafters of the National Association of Insurance Commissioners Insurance Guaranty Association Model Bill stated, 'The subcommittee does not feel that coverage should be extended to elements of the insurance industry which know or reasonably can be expected to know the financial condition of various companies.' " (*Id.* at p. 734.)

Thus, membership in CIGA is an involuntary aspect of doing business in the California insurance industry. The member insurance companies fund CIGA, which in turn pays covered claims of insolvent member insurers. Picturing CIGA as a pocket filled by contributions from all California insurers, it is understandable that no public policy would be served by dipping into that pocket to pay a claim asserted by one of the very members whose involuntary contributions had created the fund in the first place. However, this transfer of funds from one large pocket to a smaller one, although reflective of the traditional theory underlying a claim asserted by right of subrogation, is not the situation which exists when the employer or compensation carrier seeking reimbursement does so for benefits paid under the workers' compensation law.

California's comprehensive system of workers' compensation benefits is designed not only to eliminate tort actions filed by employees against employers for injuries occurring during the course of employment, but also to assure for such injured employees a fund from which benefits can be drawn in a relatively expeditious manner to aid the employee with living, medical,

and rehabilitative expenses resulting from the injury. As pointed out in Lasky, *Subrogation Under the California Workmen's Compensation Laws—Rules, Remedies and Side Effects* (1972) 12 Santa Clara L. Rev. 1, reimbursement of benefits paid out when the employee recovers a personal injury judgment against the third party tortfeasor is a necessary part of the underlying workers' compensation scheme affecting both the rates employers must pay for workers' compensation insurance and the amount of the benefit available to injured employees. Lasky noted that the policy issues involved in the system of tort recovery and subsequent reimbursement of benefits previously received has an impact well beyond the parties litigating personal injury claims. "Subrogation in workmen's compensation insurance involves California employers because it affects the rates they pay for insurance; it also has a relationship to the level of workmen's compensation benefits paid and in this regard affects the interest of all employees, not merely those with third-party actions. The connection of such subrogation policies with industrial safety practices is also a matter of concern to the public generally as well as to employers and their employees." (*Id.* at p. 4.) Lasky discusses in some detail how subrogation affects both the employer's compensation insurance rates and the benefits available to all employees. (*Id.* at pp. 4-6.)

In light of the obvious social importance of the policies which underlie the statutory provisions for reimbursement of workers' compensation benefits, even if characterized as subrogation, there is certainly a clear legislative policy militating in favor of reimbursement whenever possible. That policy distinguishes this "subrogation" from the more traditional concept common in the insurance industry. This is not a case of one insurance company recouping its losses at the expense of fellow members of the industry. It is evident that permitting reimbursement for workers' compensation benefits even though the tortfeasor's liability insurer may have become insolvent will further the purpose for which CIGA was created, i.e., protection of the injured public, not other insurance companies, from insolvencies in the industry. In a sense, appellant correctly characterizes itself in the existing circumstances of this case as a victim of the tortfeasor's conduct the same as the plaintiff. There is, therefore, no policy reason for prohibiting enforcement of appellant's lien against plaintiff's recovery. The only conduit through whom the funds from CIGA pass is another victim of the conduct of the tortfeasor insured by CIGA.

If the Legislature determines that exclusion of subrogated claims from covered claims in the CIGA legislation should include claims for reimbursement of workers' compensation benefits, the Legislature may incorporate such a provision into Insurance Code section 1063.1. Until such time as the Legislature does so, we believe the policy which justifies reimbursement of

workers' ompensation benefits for the good of employer and employee alike outweighs the policy underlying the statutory exclusions on which defendants rely, i.e., that neither solvent insurance companies nor state agencies should be allowed to recoup their losses, occasioned when a member insurer becomes insolvent, from those funds earmarked to pay claims of injured individuals otherwise unable to recover from the insolvent member.

Therefore, we conclude that defendants' objection to appellant's lien based on Insurance Code section 1063 is without merit. While this may mean that plaintiff's recovery is reduced even further since appellant's lien exceeds the $50,000 stipulated amount, it must be kept in mind that plaintiff has already received in cash the amount of those benefits for which appellant seeks reimbursement. The jury's determination that plaintiff was entitled to $75,000 to compensate him for his injury is not undermined by appellant's lien since plaintiff has already had the benefit of the money he would otherwise have obtained in the jury verdict.

 This leaves for consideration the trial court's award of $4,865.52 costs to defendants from appellant. The costs awarded represent defendants' claim of expenses incurred for discovery after appellant filed its complaint in intervention.

In support of the trial court's award of these costs, defendants cite the recent decision in *Catello v. I.T.T. General Controls* (1984) 152 Cal.App.3d 1009 [200 Cal.Rptr. 4] that an intervener may be held liable for costs incurred during the time it has been a party to the action. The court held that "[t]he voluntary dismissal of an action by one of several plaintiffs creates liability for costs, even though the balance of the action proceeds to trial. [Citation omitted.]" (*Id.* at p. 1014.) However, in *Catello, supra,* an injured employee sought to recover damages from a third party tortfeasor. The employer's compensation carrier intervened in the employee's action and then dismissed. The jury returned a verdict *in favor of* the defendant tortfeasor. As the prevailing party, the defendant in *Catello* was statutorily entitled, pursuant to Code of Civil Procedure section 1032, to recover costs. Incident to that recovery, it seems patently equitable to permit recovery from the intervener for costs incurred during the period of intervention.

However, the rule of *Catello* does not support an award of costs to defendants in a case such as this where defendants were not the prevailing parties. The inequity here is obvious. Pursuant to Code of Civil Procedure section 1032 a defendant is entitled to costs only upon a judgment in his favor. To permit losing defendants to transfer their expenses of litigation to one who has intervened on the side of the plaintiff imposes a heavy penalty indeed

upon an intervener who has elected to dismiss his complaint. This is particularly true when, as here, the claimed expenses reflect extensive probing of the validity of plaintiff's medical injury. Had appellant remained in the suit, it would be entitled to reimbursement for the expenses it actually paid to plaintiff in workers' compensation benefits, and this amount would have been the beginning and the end of the proof required from appellant to sustain its complaint in intervention. An employer who intervenes is not required to prove the scope or seriousness of the plaintiff's injury; such an employer is required to prove only the amount of benefits actually paid.

However, to the extent defendants in this case incurred expenses during the time appellant was a party that would not have been incurred but for appellant's intervention, it is appropriate to award defendants those costs and those costs only. Since it is not possible to tell from the record before this court what, if any, expenses claimed by defendant fall into that category of compensable costs, the judgment awarding defendant costs of suit in the amount of $4,865.52 is reversed with instructions to the trial court to rehear appellant's motion to tax costs and award costs in accordance with this court's opinion.

The judgment is reversed and the cause is remanded to the trial court for further proceedings consistent with this opinion, including a limited new trial on the issue of appellant's concurrent negligence as a cause of plaintiff's injuries, and a rehearing on appellant's motion to tax costs. Appellant shall recover from defendants its costs on appeal.

Woolpert, Acting P. J., and Ballantyne, J., concurred.

Petitions for a rehearing were denied April 14, 1987, and respondents' petition for review by the Supreme Court was denied July 16, 1987.