[No. B115886. Second Dist., Div. Seven. Dec. 21, 1998.]

HOWARD CONTRACTING, INC., Plaintiff and Respondent, v.
G.A. MacDONALD CONSTRUCTION CO., INC., Defendant,
Cross-complainant and Respondent;
CITY OF LOS ANGELES, Cross-defendant and Appellant;
SOIL RETENTION SYSTEMS, INC., Movant and Appellant.

## COUNSEL

K. Martin White for Movant and Appellant.

James K. Hahn, City Attorney, Jerome Montgomery, Assistant City Attorney, and James Patrick Nollan, Deputy City Attorney, for Cross-defendant and Appellant.

Irwin Chasalow for Plaintiff and Respondent.

Monteleone & McCrory, Patrick J. Duffy and G. Robert Hale for Defendant, Cross-complainant and Respondent.

## OPINION

## BOLAND, J.*—

### SUMMARY

A general contractor on a public works construction project is permitted by statute to recover damages arising out of delays attributable to a municipality's acts or omissions, notwithstanding the municipality's status as a charter city and a clause in the contract precluding an award of damages for delay. Further, a subcontractor on the project who seeks to prosecute a claim for delay damages on a pass-through basis has standing as an aggrieved party to appeal and is entitled to offer evidence to support the claim.

### BACKGROUND

#### I.  *Project*

This case arises out of a public works contract relating to a construction project to rehabilitate the Venice Canals located in Los Angeles. The project

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

consisted of improving the existing canal system by removing material from the canals and constructing soil retaining walls along the banks of the canals.

The project was owned and designed by the City of Los Angeles (City). Following a formal bidding process, G.A. MacDonald Construction Co., Inc., was awarded the general contract on the project. MacDonald Construction subcontracted portions of the work to two other contractors, Howard Contracting, Inc., and Soil Retention Systems, Inc. (formerly Loffel Retaining Walls, Inc.). Howard Contracting was responsible for clearing debris from the canals, excavating material from the sides and bottom of the canals, and earth grading and filling on the project site. Following the completion of excavation operations and earthwork activities, Soil Retention Systems was required to provide and install retaining walls to stabilize the banks of the canals.

In order to proceed with work on the project, the City was required to obtain permits from various regulatory agencies, including the California Coastal Commission, United States Army Corps of Engineers, and California Regional Water Quality Control Board.

## II.  *Underlying Claims*

MacDonald Construction asserts claims against the City for cost overruns and damages attributable to the City's acts and omissions relating to the project. The claims assert that the acts and omissions constituted breaches of the City's obligations under the contract.

The project was subject to a competitive bidding process, and was to be constructed according to contract documents prepared by the City and furnished to bidders. Additionally, the Standard Specifications for Public Works Construction (Standard Specifications) were incorporated into the project. In September 1991, the City solicited competitive bids for the construction of the project, which were to be submitted on October 30, 1991.

MacDonald Construction contends that during the bidding process the City failed to disclose known material information to bidders concerning pending regulatory agency restrictions on the project and anticipated difficulties with respect to timely completion of project work. According to MacDonald Construction, the City was aware that the pending restrictions and anticipated difficulties would adversely impact the cost of performance and the required time to perform the work.

### A.  *Restriction on Disposal of Excavated Material*

MacDonald Construction asserts that prior to October 1991, the Regional Water Quality Control Board informed the City that soil tests revealed

contamination in the material subject to excavation from the Venice Canals. As a result, the board advised the City that the contaminated material could not be removed from the project site to an unclassified landfill, and directed the disposal of the material in a class III landfill or other special landfill. Despite the City's receipt of such information, the soil contamination report sent by the City to bidders on October 16, 1991, concluded that "special handling or stockpiling of the excavated material is not deemed necessary." The report also stated the excavated material could be removed to any unclassified landfill. Other bidding documents likewise failed to inform bidders that a special disposal site would be required for the excavated material. Moreover, supplemental information provided to bidders indicated that no special requirements would be imposed for handling and disposing of the excavated material.

### B. *Restriction on Access to Work*

MacDonald Construction maintains that before soliciting bids on the project, the City was aware that federal agencies intended to impose restrictions on the project which prohibited construction from April 1 to September 30 to avoid adversely impacting the nesting season of the least tern migratory bird. Despite knowledge of the pending restrictions, the City's bidding documents did not inform the bidders of any restrictions upon the time for performing the work.

On October 10, 1991, the City supplemented the notice to bidders informing them: "The construction stages may be interchanged to suit the requirements of any permitting agency or as directed by the City." However, the supplemental notice did not inform bidders that the City's reservation of the right to interchange the stages was due to the prohibition of work during the April 1 through September 30 nesting season. Additionally, the contract documents did not specify time restrictions for performing work on the canals, nor did the City inform bidders that one stage of the work could be performed only during the rainy winter season.

### C. *Contract, Permits and Performance*

MacDonald Construction claims it was ignorant of the prohibition against the disposal of excavated material in an unclassified landfill and the anticipated difficulties resulting from the least tern restrictions when it prepared and submitted its bid on October 30, 1991. It fully expected to be able to perform work on the canals before the 1992 rainy season and to complete the work prior to the contract completion date.

When the bids were submitted in late October 1991, the City had not yet obtained any permits from regulatory agencies authorizing performance of

the work. Subsequently, on November 14, 1991, the California Coastal Commission issued a permit. However, the permit prohibited work in a portion of the canals from April 1 through September 30 in order to protect the least tern.

On January 17, 1992, the City awarded the construction contract to MacDonald Construction based upon its submission of a low bid. On February 14, 1992, the City issued a notice to MacDonald Construction to proceed with work on the project.

Due to the requirement of removing excavated material to an alternate site, the City suspended excavation operations until an acceptable disposal site was located. On June 12, 1992, four months after MacDonald Construction was directed to proceed with the work, the Regional Water Quality Control Board issued a permit authorizing disposal of excavated materials at the Port of Los Angeles. Thereafter, MacDonald Construction and its subcontractors learned about the restrictions on site access due to least tern migration.

According to MacDonald Construction, the undisclosed restriction upon disposal of excavated material, the City's failure to timely obtain a permit to dispose of excavated material, and the suspension of the excavation work delayed commencement of critical work on the project for four months. Further, as a result of the undisclosed access restrictions, MacDonald Construction claims it was compelled to perform rehabilitation work during the rainy winter season, and unfavorable weather conditions adversely impacted productivity and delayed completion of work for an additional four months.

Except for the City's failure to timely procure a permit to dispose of the excavated material and to provide unlimited access to the work site due to the least tern restrictions, MacDonald Construction contends it would have been able to perform and complete the work within the original time frame. Due to the City's acts and omissions, however, MacDonald Construction claims project completion was delayed eight and one-half months, causing it and its subcontractors to incur extra costs in performing the work and extended project overhead for the period of the delay.

## III. *Litigation*

Howard Contracting initiated litigation by filing a complaint against MacDonald Construction and the City to recover damages for delay and disruption. MacDonald Construction cross-complained against both Howard Contracting and the City. The cross-complaint against the City alleged

causes of action for breaches of contract, implied covenant, implied warranty and changed conditions clause, and sought to recover extra costs and damages incurred by MacDonald Construction and its subcontractors for delays and disruptions allegedly caused by the City's various breaches. MacDonald Construction and Howard Contracting subsequently settled their dispute. Only the causes of action for breaches asserted against the City were litigated.

In advance of trial, MacDonald Construction, Howard Contracting and the City stipulated that retired Superior Court Judge George M. Dell would hear the trial under a Code of Civil Procedure section 638 general judicial reference.

The trial commenced on September 3, 1996. Following the presentation of evidence and submission of written arguments, the referee issued a statement of decision on July 17, 1997. The referee found that the City failed to disclose material information to MacDonald Construction and its subcontractors concerning project restrictions and difficulties, failed to timely obtain construction permits from regulatory agencies, and failed to provide access to the work site. The statement determined that the City's acts and omissions constituted breaches of the contract, the implied warranty of correctness of plans and specification, and the implied warranty of cooperation. As a result of the breaches, the referee concluded MacDonald Construction and Howard Contracting sustained damages of $1,165,990.50, plus further interest until July 1, 1997, of $503,859.87, plus further interest from July 1, 1997, until the date of judgment of $11,177.25. The statement of decision, however, specifically determined Soil Retention Systems was not entitled to recover damages on the pass-through claim asserted on its behalf by MacDonald Construction.

After hearing various posttrial motions and a motion for entry of judgment, Judge John P. Shook entered judgment on August 5, 1998, in accordance with the referee's statement of decision. These appeals followed.

IV. *Appeals*

In its appeal, the City urges reversal of the judgment on the grounds of immunity from liability for any delay damages caused by the alleged misrepresentations and breaches of contract, MacDonald Construction and Howard Contracting's failure to prove delay damages, and MacDonald Construction's obligation to discover the City's misrepresentation and failure to establish a changed condition.

Soil Retention Systems's appeal is based upon the trial court's denial of a motion to vacate a judgment that allegedly precluded its recovery of delay damages on a pass-through basis.

## Standard of Review

The trial court's factual determinations are reviewed under the substantial evidence standard and are not disturbed if supported by substantial evidence. (*Crawford* v. *Southern Pacific Co.* (1935) 3 Cal.2d 427 [45 P.2d 183].) Issues concerning the application of statutory authority present questions of law subject to independent review of the trial court's rulings. (*Stratton* v. *First Nat. Life Ins. Co.* (1989) 210 Cal.App.3d 1071 [258 Cal.Rptr. 721].) Finally, issues relating to the exercise of discretion on a motion to reopen a case are subject to an abuse of discretion standard. (*Shimpones* v. *Stickney* (1934) 219 Cal. 637, 642 [28 P.2d 673].)

## Discussion of the City's Appeal

### I. *Public Contract Code Permits Recovery of Delay Damages*

#### A. *"No Damage for Delay" Clause Does Not Preclude Recovery.*

The City argues that Public Contract Code section 7102 does not invalidate the "no damage for delay" clause contained in the contract between MacDonald Construction and the City, and the clause operates to bar MacDonald Construction and its subcontractors from recovering delay damages.

The contract between the City and MacDonald Construction contains a limited "no damage for delay" clause. Under subsection 6-6.1 of the Standard Specifications of the contract, a contractor is entitled to an extension of time to complete work delayed by unforeseen events, but not to damages attributable to the delay. Subsection 6-6.3, however creates an exception to the "no damage for delay" provision, specifically providing for payment for unreasonable and unanticipated delays caused by the public agency.

Public Contract Code section 7102 permits a contractor to recover delay damages, provided the "delay is unreasonable . . . and not within the contemplation of the parties." Further, damages are recoverable in spite of a "no damage for delay" provision contained in a public agency contract. (Cal. Construction Contracts and Disputes (Cont.Ed.Bar 1990) § 4.29, p. 277.)

Notwithstanding the provisions of Public Contract Code section 7102, the City contends the "no damage for delay" clause in the contract operates as an express and enforceable waiver by MacDonald Construction of any remedy for construction delay other than an extension of time to complete work provided under subsection 6-6.1. Section 7102, however, specifically prohibits public agencies from requiring "the waiver, alteration, or limitation of

. . . applicability of [the provision and renders] [a]ny such waiver, alteration, or limitation . . . void." Even before the adoption of section 7102, California courts generally held that "no damage for delay" clauses in public contracts did not apply to delays arising from a breach of contract caused by the other party to the contract. (*Hawley* v. *Orange County Flood Control etc. Dist.* (1963) 211 Cal.App.2d 708 [27 Cal.Rptr. 478]; *McGuire & Hester* v. *City etc. S. F.* (1952) 113 Cal.App.2d 186 [247 P.2d 934]; *Milovich* v. *City of Los Angeles* (1941) 42 Cal.App.2d 364 [108 P.2d 960].)

The referee's statement of decision found the City was responsible for the delays on the project. The evidence before the trial court establishes the City's responsibility, and the sufficiency of the evidence to support the finding has not been challenged. Before the bids were submitted, the City was aware regulatory agencies intended to impose restrictions on the disposal of excavated material and on project access. However, the City not only ignored the restrictions in designing the project and preparing project plans and specifications, but concealed information about the restrictions from bidders. Owing to the City's concealment and nondisclosure of information, the bidders could not and did not address the potential impact of the restrictions in their bid submission documents. When the bids were submitted and the contract was awarded, neither MacDonald Construction nor its subcontractors contemplated the delays that occurred.

The City was also responsible for obtaining project permits. Even after the disposal restriction was disclosed, commencement of critical work on the project was delayed due to the City's failure to timely secure a permit from the Regional Water Quality Control Board to dispose of the excavated material.

■ The rule is well settled that in every construction contract the law implies a covenant that the owner will provide the contractor timely access to the project site to facilitate performance of work. When necessary permits relating to the project are not available or access to the site is limited by the owner, the implied covenant is breached. (*D. A. Parrish & Sons* v. *County Sanitation Dist.* (1959) 174 Cal.App.2d 406 [344 P.2d 883]; *Hensler* v. *City of Los Angeles* (1954) 124 Cal.App.2d 71 [268 P.2d 12].) ■ The trial court found the delays were caused by the City's breaches of contract and implied covenant in failing to disclose known restrictions on project performance, to obtain necessary permits, and to provide timely access to perform the work. Those findings render the "no damage for delay" provision in the contract inapplicable. Moreover, subsection 6-6.3 of the Standard Specifications expressly authorizes compensation for delay damages where, as here, a

basis exists for concluding that the delays were unreasonable and not within the contemplation of the parties.

B.  *Charter City Status Does Not Provide Exemption From Application of Public Contract Code.*

Despite the application of Public Contract Code section 7102 to public agency contracts and the City's status as a public agency, the City asserts section 7102 is inapplicable because of the City's status as a charter city. The City argues that charter city status renders it immune from state statutes regulating contracts inasmuch as a public works contract is a municipal matter that falls under the "home rule" doctrine.

The "home rule" doctrine grants precedence to a city charter or municipal enactment over a conflicting state statute purporting to regulate a municipal matter. (*California Fed. Savings & Loan Assn.* v. *City of Los Angeles* (1991) 54 Cal.3d 1 [283 Cal.Rptr. 569, 812 P.2d 916].) Although a charter city enjoys the exclusive power to legislate municipal matters under article XI, section 5 of the California Constitution, the "home rule" doctrine applies only when a subject matter conflict exists between a charter or other municipal enactment and a state statute.

In *California Federal*, the Supreme Court established a test to determine whether the state has infringed upon a charter city's sovereignty under the "home rule" doctrine. (54 Cal.3d at pp. 16-18.) Under the first prong of the test, the existence of an actual conflict between a state statute and a local measure must be ascertained. Once a conflict is found to exist, a further determination must be made whether the subject matter of the statutory enactment is more properly characterized as a local or statewide concern.

In this case, the purported conflict with a provision of a state statute does not relate to a charter provision or municipal enactment, but to a "no damage for delay" clause contained in the Standard Specifications of the contract between MacDonald Construction and the City. Because the City fails to establish a conflict between the Public Contract Code and any charter provision or municipal enactment, Public Contract Code section 7102 applies. As a consequence, the contract clause purporting to exempt the City from liability for damages resulting from delays caused by the City is unenforceable under section 7102.

C.  *Critical Path Method Schedule Is Not Required to Prove a Delay Damages Claim*

The City maintains that *Mega Construction Co., Inc.* v. *United States* (1993) 29 Fed. Cl. 396 requires a contractor to use a computer-generated

network diagram schedule, known as a critical path method schedule, to establish a claim for construction delay damages. Because MacDonald Construction failed to utilize such a schedule, the City asserts project delay damages are not recoverable.

Under a federal government construction project, delays that prolong activities of a project falling along a critical path may be compensable. *Mega Construction* held that a contractor's entitlement to delay damages requires the presentation of evidence that establishes the critical path of a project and the occurrence of delays along the path. In that case, the contractor's ineffective use of a bar chart at trial failed to identify the critical path or to demonstrate that compensable project delays occurred on the path. While critical of the specific evidence upon which the contractor relied in presenting its claim, *Mega Construction* does not stand for the proposition that use of a critical path method schedule is required to establish the occurrence of compensable project delays. ■ Even if the case did stand for such a proposition, federal decisional authority is neither binding nor controlling in matters involving state law. (9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 943, p. 984.)

Under the circumstances, MacDonald Construction was not required to use a critical path method schedule to establish the critical path delays in the Venice Canals project. Unlike the bar chart utilized in *Mega Construction*, MacDonald Construction's bar chart schedule was based on a critical path method analysis. The bar chart schedule used here identified the project's critical path and demonstrated that the delays constituted critical path delays.

D.  *Undisclosed Expert Cannot Offer a Contrary Opinion*

■ The City asserts the trial court improperly excluded the testimony of the City's undisclosed expert witnesses. It argues the court erred in concluding the witnesses' proposed testimony consisted of impermissible opinion contrary to the opinion previously expressed by MacDonald Construction's expert, rather than proper impeachment of a foundational fact forming the basis of the prior expert's opinion.

Before trial, MacDonald Construction timely designated accountant Donald Schulter as an expert witness on the subject of accepted industry practices for analyzing construction delay claims. During the pretrial phase, the City expressly "decline[d] to designate any experts" to testify at trial under section 2034 of the Code of Civil Procedure, and "reserved all rights to elicit expert opinions from witnesses called by any other party, . . . [and to] later name subsequently obtained experts."

At trial, Schulter testified that the project delays produced additional office overhead expenses and labor disruption costs, and calculated Mac-Donald Construction's delay damages based upon an application of the Eichleay formula. He further expressed an opinion that the formula used in calculating damages was the accepted industry standard for assessing construction project delay claims.

Following the completion of MacDonald Construction's case, the City announced its intention to call Accountant Robert B. Shlonsky and Professional Project Manager George Ossman III as defense experts. MacDonald Construction sought an offer of proof regarding the proper subject matter of the proposed experts' testimony. While conceding that the Eichleay formula was the proper industry standard for analyzing construction delay claims, the City asserted the experts' testimony would impeach Schulter's testimony regarding the proper application of the formula. The City maintained the impeachment testimony would establish the "existence or nonexistence" of delay damages by demonstrating Schulter's misapplication of the formula.

MacDonald Construction objected on the ground that the proposed testimony by previously undisclosed expert witnesses was improper impeachment under Code of Civil Procedure section 2034, subdivision (m) and *Kennemur* v. *State of California* (1982) 133 Cal.App.3d 907 [184 Cal.Rptr. 393]. In sustaining the objection, the court reasoned the proposed testimony constituted an impermissible contrary opinion concerning accepted accounting practices used in applying the Eichleay formula. It further reasoned that the City's offer of proof failed to demonstrate the falsity or nonexistence of any foundational fact upon which MacDonald Construction's expert relied in rendering his opinion.

Under the Code of Civil Procedure section 2034, subdivision (m), an undisclosed expert witness called for impeachment purposes is permitted to testify that a foundational fact relied upon by a prior expert is either incorrect or nonexistent. (*Kennemur* v. *State of California, supra*, 133 Cal.App.3d at p. 925.) A broad definition of "impeachment" to mean " 'To dispute, disparage, deny, or contradict' " arguably supports the City's contention that its expert witnesses could properly testify in general rebuttal to MacDonald Construction's case, regardless of the City's failure to disclose the witnesses' proposed testimony before trial. (*Kennemur* v. *State California, supra*, at p. 921, quoting Black's Law Dict. (5th ed. 1979) p. 886.) However, under section 2034, subdivision (m), " 'calling an expert witness to express an opinion contrary to that expressed by another expert witness is not the "impeachment" contemplated by section [2034, subdivision (m)].' "

(133 Cal.App.3d at p. 922, quoting *Ellenberger* v. *Karr* (1982) 127 Cal.App.3d 423, 427 [179 Cal.Rptr. 583].)

Unless the City's experts were prepared to challenge the accuracy of the calculations formulated by MacDonald Construction's expert or to provide substitute figures regarding overhead and costs, their proposed testimony was improper impeachment. Expert testimony contradicting an opinion expressed by MacDonald Construction's expert about accepted accounting practices for calculating overhead and costs falls within the category of testimony explicitly proscribed by Code of Civil Procedure section 2034, subdivision (m). Therefore, the testimony of the City's undisclosed expert witnesses was properly excluded because it was offered as improper contrary opinion testimony, rather than for the permissible purpose of contradicting a foundational fact.

II.  *Contractor May Recover Delay Damages for Extended Overhead*

A.  *Interstate General Decision Does Not Restrict the Right to Recover Extended Overhead*

The City contends the trial court erred in not following the three-prong test set forth in *Interstate General Government Contractors* v. *West* (Fed. Cir. 1993) 12 F.3d 1053 for determining the recoverability of extended overhead.

*Interstate General* established the rule that a contractor cannot recover on a claim for unabsorbed office overhead where it is able to meet the original contract deadline or finish early despite a government-caused delay. An exception applies where the contractor demonstrates from the outset an intent to complete the work early, a capacity to do so, and a likelihood of early completion but for the government's delay. Application of the three-prong test requirement of *Interstate General*, however, is required only where the contractor finishes the work by the original specified contract completion date or earlier.

MacDonald Construction was unable to complete work on the project by the original June 1993 contract completion date. Delays attributable to the City's acts or omissions extended the performance period, and work was not completed until December 1993. Under the facts of this case, therefore, *Interstate General* is inapplicable.

Even though not compelled to do so under the circumstances, MacDonald Construction nonetheless met the three-prong *Interstate General* test. The bar chart schedule MacDonald Construction provided to the City before work

commenced indicates its intention to complete the project earlier than the originally allotted 330 working days. The unrefuted evidence also reveals MacDonald Construction could have completed the project within the initial schedule but for the delays caused by the restrictions on disposal of excavated material and on access to the project.

### B. City's Liability for Concealment and Nondisclosure Is Not Absolved by Contract Provision or Lack of Investigation

The City argues that a contract provision requiring a contractor's compliance with requirements of project permits issued by regulatory agencies absolves the City of any liability for damages resulting from concealment or nondisclosure of relevant information. The City contends that the permits disclosed the agencies' intent to impose restrictions on disposal of excavated material and on access to the project, and MacDonald Construction's examination of the permits would have revealed the adverse affect of the restrictions upon the cost and time required to complete the project.

Under general principles of contract and tort law, a party who conceals or fails to disclose material information to another is liable for fraud. In the public construction contract context, however, the conduct of a public agency which would otherwise amount to a tortuous misrepresentation is treated as a breach of contract. The underlying theory is that providing misleading plans and specifications constitutes a breach of the implied warranty of correctness. (*Souza & McCue Const. Co.* v. *Superior Court* (1962) 57 Cal.2d 508 [20 Cal.Rptr. 634, 370 P.2d 338].)

In *City of Salinas* v. *Souza & McCue Construction Co.* (1967) 66 Cal.2d 217 [57 Cal.Rptr. 337, 424 P.2d 921], the Supreme Court stated the applicable law when a public agency fails to disclose information relevant to the performance of a contract: "It is the general rule that by failing to impart its knowledge of difficulties to be encountered in a project, the owner will be liable for misrepresentation if the contractor is unable to perform according to the contract provisions." (*Id.* at p. 222.) In that case, the City of Salinas materially misrepresented the soil conditions on a construction site by failing to inform Souza and other project bidders about unstable soil conditions known to the municipality. Salinas argued that a contract provision precluded municipal liability for the consequences of the misrepresentation. The contract provision required bidders to carefully examine the construction site, and provided that submission of a bid constituted prima facie evidence of the bidder's site inspection. The Supreme Court rejected the municipality's arguments stating: ". . . even if the language had specifically directed

the bidders to examine *subsoil* conditions, which it did not, it is clear that such general provisions cannot excuse a governmental agency for its active concealment of conditions." (*Id.* at p. 223.)

The contract provision in this case did not specifically direct bidders to examine the permits issued by the regulatory agencies. Moreover, no reason appears to have compelled them to do so. In fact, since no permits were issued until after the bid submission date, no permits existed for bidders to review.

Despite the City's awareness that various regulatory agencies intended to impose restrictions on the project, the City's plans and specifications did not include any provision regarding the anticipated difficulties resulting from the restrictions. Moreover, the bidding documents provided by the City failed to contain any warning about the adverse conditions contractors were likely to encounter. Since the City bore responsibility for obtaining the project permits, bidders were reasonably entitled to assume the City would inform them of any permit requirements or restrictions adversely affecting their ability to perform work on the project.

The City is therefore not absolved by either contractual provision or decisional authority for failing to include restrictions in the project plans and specifications provided to bidders and to timely secure permits for the project.

C. *Changed Circumstances Provides Basis for Imposing Liability*

The City argues the trial court erred in finding that the special disposal requirement for the excavated material constituted a changed condition and provided a basis for imposing liability on the City for damages resulting from the special disposal requirement.

The changed condition clause in the contract required the City to adjust the compensation payable to the contractor if subsurface or soil conditions encountered on the project differed from conditions specified in the contract. Section 3-4 of the Standard Specifications in the contract defines a changed condition as "Material differing from that represented in the contract which the contractor believes may be hazardous waste, as defined in section 25117 of the Health and Safety Code, that is required to be moved to Class I, Class II or Class III disposal site in accordance with provisions of existing law."

The original specifications provided to bidders indicated that removal of hazardous waste material was involved in the work of the project. Before the

bids were submitted, however, the City deleted the reference to hazardous waste removal. The City's soil contamination report provided to project bidders represented that no hazardous compounds were found in the tested material, and no special handling or stockpiling of excavated material would be necessary. The report also indicated the excavated material could be removed to an unclassified landfill disposal site.

MacDonald Construction did encounter changed conditions on the project. Contrary to the contract documents, the excavated material was hazardous waste as specified in the changed conditions clause, and was required to be removed to a special disposal site. In fact, the Regional Water Quality Control Board required special handling and removal of the material to a class III type disposal site.

The trial court therefore correctly determined that changed conditions were encountered on the project.

DISCUSSION OF SOIL RETENTION SYSTEMS APPEAL

I. *Pass-through Claimant Has Standing to Appeal*

The City contends that as a nonparty, Soil Retention Systems lacks standing to appeal a judgment precluding MacDonald Construction from recovering delay damages on its behalf on a pass-through claim.

During trial, the City formally moved for judgment under Code of Civil Procedure section 631.8 as to Soil Retention Systems's pass-through claim for delay damages. The City argued that no legal basis for the claim existed due to Soil Retention Systems's failure to sue MacDonald Construction or Howard Contracting. The referee's intended decision indicated a determination to award damages to Howard Contracting on a pass-through theory, but not to Soil Retention Systems.

MacDonald Construction moved to reopen the trial for the limited purpose of admitting into evidence a settlement and litigation agreement which authorized MacDonald Construction to recover delay damages on Soil Retention Systems's behalf. The City opposed the motion to reopen the trial, claiming prejudice from a lack of prior notice regarding the existence of the agreement. MacDonald Construction responded that the settlement and litigation agreement was identified and made available to the City for inspection during discovery in response to the City's demand for production, and a copy of the agreement was provided to the City at the beginning of trial. The referee's statement of decision, however, precluded MacDonald Construction from recovering damages on behalf of Soil Retention Systems due to the

latter's failure to file a separate action against MacDonald Construction and the City, as Howard Contracting had. The judgment entered by the trial court was consistent with the referee's determination.

Soil Retention Systems moved to vacate the judgment under Code of Civil Procedure section 663, seeking confirmation of its claim for damages on a pass-through basis under general construction contract law and the settlement and litigation agreement. The trial judge denied the motion to vacate on the ground that Soil Retention Systems lacked standing as a nonparty.

■ Although only a party of record may generally appeal from a judgment, an entity that is initially a nonparty in proceedings but is aggrieved by a judgment may become a party of record and secure the right to appeal by moving to vacate the judgment under Code of Civil Procedure section 663. (*Marsh* v. *Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297 [50 Cal.Rptr.2d 493]; *Burrow* v. *Pike* (1987) 190 Cal.App.3d 384, 391 [235 Cal.Rptr. 408].) Further, any entity that has an interest in the subject matter of a judgment and whose interest is adversely affected by the judgment is an aggrieved party and is entitled to be heard on appeal. However, the aggrieved party's interest must be immediate, pecuniary and substantial, and not merely a nominal or remote consequence of the judgment. (*Slaughter* v. *Edwards* (1970) 11 Cal.App.3d 285, 291 [90 Cal.Rptr. 144].)

■ The judgment adversely affects Soil Retention Systems's right to obtain a monetary recovery under its contract with MacDonald Construction, which is a party to the judgment. Confronted with recovering losses claimed to exceed $300,000, Soil Retention Systems is an aggrieved party under the rationale of *Slaughter*. Its interest is immediate, pecuniary and substantial, and not a nominal consequence of the judgment. Moreover, Soil Retention Systems properly sought to perfect its right to appeal by moving to vacate the judgment under Code of Civil Procedure section 663.

Accordingly, as an aggrieved party, Soil Retention Systems has standing to appeal the judgment under Code of Civil Procedure section 902.

## II. *Pretrial Agreement Provides Legal Basis for Pass-through Claim*

■ Prior to the commencement of proceedings, MacDonald Construction and Soil Retention Systems entered into a settlement and litigation agreement concerning the latter's claims for significant project cost overruns due to the City's failure to disclose anticipated difficulties and pending restrictions. The agreement provided that MacDonald Construction would

pursue Soil Retention Systems's claim, along with its own, on a pass-through basis in exchange for Soil Retention Systems's agreement to accept any damages MacDonald Construction recovered on its behalf as full resolution of its claim. In accord with the agreement, MacDonald Construction included Soil Retention Systems's claim in the claim filed with the City. Howard Contracting, which also experienced cost overruns, sued Mac-Donald Construction. In response, MacDonald Construction cross-complained against Howard Contracting and the City, including allegations relating to Soil Retention Systems's claim.

At trial, MacDonald Construction proceeded on the apparent assumption that presentation of the settlement and litigation agreement was not necessary to prove Soil Retention Systems's pass-through claim for delay damages, and did not seek to offer the agreement into evidence. The City moved for judgment on Soil Retention Systems's pass-through claim under Code of Civil Procedure section 631.8 based on the lack of evidence of "any agreement between [Soil Retention Systems and G.A. MacDonald Construction] relating to the outcome of this trial or a demand to pursue the City regarding the Venice Canals project." When the referee's intended decision found no legal basis to award damages on the pass-through claim, MacDonald Construction moved unsuccessfully to reopen the proceedings to bring the settlement and litigation agreement to the referee's attention.

Code of Civil Procedure section 631.8, under which the City sought judgment, specifically provides: ". . . The court may consider all evidence recovered, provided, however, that the party against whom the motion for judgment has been made shall have had an opportunity to present additional evidence . . . ."

In granting the City's Code of Civil Procedure section 631.8 motion, the referee failed to afford MacDonald Construction the opportunity specifically provided by the section to permit a trial court to consider the settlement and litigation agreement as evidentiary support for Soil Retention Systems's pass-through claim.

Under *Coit Drapery Cleaners, Inc.* v. *Sequoia Ins. Co.* (1993) 14 Cal.App.4th 1595, 1611-1612 [18 Cal.Rptr.2d 692], "where a matter is tried to the court as here, the trial judge has broad discretion to reopen the matter prior to final judgment, even over the objection of the litigants . . . . Such a procedure . . . does not violate the litigants' rights when adequate notice is given, as here—and may, in fact, be required in order to reach a just result."

If the referee had granted the request to reopen the trial and admitted the settlement and litigation agreement into evidence, the City's interests would not have suffered undue prejudice. The City was fully aware of both the existence and contents of the agreement. It was identified and made available for inspection during pretrial discovery in response to the City's demand for document production. Moreover, at the beginning of trial, a copy of the agreement was provided to the City.

■■■ As a matter of law, a general contractor can present a subcontractor's claim on a pass-through basis. (*Maurice L. Bein, Inc.* v. *Housing Authority* (1958) 157 Cal.App.2d 670 [321 P.2d 753].) When a public agency breaches a construction contract with a contractor, damage often ensues to a subcontractor. In such a situation, the subcontractor may not have legal standing to assert a claim directly against the public agency due to a lack of privity of contract, but may assert a claim against the general contractor. In such a case, a general contractor is permitted to present a pass-through claim on behalf of the subcontractor against the public agency. (*D. A. Parrish & Sons* v. *County Sanitation Dist., supra*, 174 Cal.App.2d 406.) As a subcontractor, Soil Retention Systems had no standing to sue the City directly, particularly on a breach of contract theory, because Soil Retention Systems and the City were not in privity of contract.

The settlement and litigation agreement was predicated on the availability of the pass-through claim process. If the process is not available to the parties, MacDonald Construction has potential exposure to Soil Retention Systems through an action for rescission of the agreement based on a failure of consideration. From a public policy standpoint, the initiation of separate litigation against a general contractor should not be compelled merely to enable a subcontractor to obtain standing when the general contractor previously agreed to pursue the subcontractor's damages claim against the public agency on a pass-through basis. To hold otherwise would be to insist on needless additional and duplicative litigation.

■■■ The referee's determination not to reopen proceedings to consider the settlement and litigation agreement was error and prejudiced the interests of Soil Retention Systems. The trial court's determination not to vacate the judgment relating to Soil Retention Systems's claim for delay damages was likewise error and compounded the prejudice.

### DISPOSITION

The judgment of the trial court in favor of MacDonald Construction is affirmed. However, the judgment is reversed to the extent it precludes an

award of damages to MacDonald Construction on a pass-through basis to compensate Soil Retention Systems for delay-related losses on the Venice Canals project. A new trial is ordered on that issue.

MacDonald Construction and Soil Retention Systems are awarded costs on appeal.

Lillie, P. J., and Johnson, J., concurred.

The petition of appellant City of Los Angeles for review by the Supreme Court was denied March 31, 1999.