[Civ. No. 6066. Fifth Dist. Apr. 13, 1982.]

MELTON E. BILYEU, Plaintiff and Respondent, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD, Defendant
and Appellant.

COUNSEL

George Deukmejian, Attorney General, Thomas E. Warriner, Assistant Attorney General, Anne S. Pressman and Donald A. Robinson, Deputy Attorneys General, for Defendant and Appellant.

Richard M. Long, Donald F. Butz and Mark Derzon for Plaintiff and Respondent.

OPINION

**FRANSON, Acting P. J.—**

STATEMENT OF THE CASE

This is an appeal from an administrative mandamus judgment holding that the appellant board improperly denied respondent employee's claim for unemployment disability benefits. In denying the claim, the board upheld the administrative law judge's (ALJ's) decision that respondent had received the maximum amount of benefits payable to an individual for any one disability benefit period as defined by the Unemployment Insurance Code. The ALJ relied on Precedent Disability Decision P-D No. 391 (May 23, 1978) in ruling that where a claimant has not recovered from a first disability and suffers a second disabling ·injury, he is not entitled to file a second disability claim for the continuous period of unemployment.

The trial court granted the writ of mandamus on the ground that respondent's two disability claims were unrelated and therefore Precedent Disability Decision, *supra*, P-D No. 391, was inapplicable. However, as we shall explain, the critical issue was whether respondent's second disability arose before or after the termination of his first disability for alcoholism. The trial court failed to decide this issue. ■ Since Unemployment Insurance Act benefits constitute property rights for purposes of judicial review (*Interstate Brands* v. *Unemployment Ins. Appeals Bd.* (1980) 26 Cal.3d 770, 775-776 [163 Cal.Rptr. 619, 608 P.2d 707]), the parties are entitled to the independent evaluation of the evidence by the superior court including findings on all essential fact questions. (Cal. Administrative Agency Practice (Cont.Ed.Bar 1970) § 7.56, p. 352; Cal. Administrative Agency Practice (Cont.Ed.Bar Supp. 1981) § 7.56, p. 97.) Accordingly, we have no alternative but to remand for this purpose.

STATEMENT OF FACTS

On May 31, 1978, respondent filed a claim for unemployment disability benefits pursuant to Unemployment Insurance Code section 2601 et seq. On the claim form, respondent stated the last day he had worked before the disability was May 1, 1978. Respondent's disability was certified by his doctor, Dr. Barnard, to be alcoholism. The time the disability should end was estimated by the doctor to be "January 1979."

Respondent was paid benefits for the full 26-week period from June 1 through November 29, 1978.

On December 7, 1978, while still unemployed, respondent filed a second claim. He stated the last day he had worked before the disability was May 1, 1978. In answer to the question regarding the first full day he was too sick to work, the respondent initially wrote May 1, 1978, then substituted December 7, 1978.

Dr. Wayne Fenderson certified respondent's second disability to have been caused by a hernia and inflammation of the gallbladder which commenced on November 20, 1978.

The respondent was first treated for his second disability by Dr. Fenderson on November 20, 1978. He entered the hospital on December 14, 1978, had surgery on December 15 and 19, and was discharged De-

cember 26, 1978. In response to the question when respondent's disability should end sufficiently to permit him to resume his regular or customary work, Dr. Fenderson answered, "11-20-78—11-30-78, 12-14-78 —2-1-78 [*sic*]."

Dr. Fenderson thereafter responded to a request for additional medical information. He estimated the respondent should be able to return to work on February 1, 1979, noting respondent had undergone two surgeries.

On January 10, 1979, the department mailed a notice of determination disallowing respondent's claim on the ground that he had exhausted the maximum amount for his benefit period.

### DISCUSSION

The purpose of unemployment disability compensation is to compensate the employee at least in part for lost wages caused by sickness or injury and to reduce to a minimum the suffering caused by his unemployment. (Unemp. Ins. Code, § 2601.) To accomplish this purpose, the law concerning disability compensation "shall be construed liberally in aid of its declared purpose to mitigate the evils and burdens which fall on the unemployed and disabled worker and his family." (*Ibid.*)

Unemployment Insurance Code section 2653 at all times pertinent to this controversy provided in relevant part: "The maximum amount of benefits payable to an individual during any *one disability benefit period* shall be 26 times his weekly benefit amount . . . ." (Italics added.)[1]

A "disability benefit period" is defined by Unemployment Insurance Code section 2608: "'Disability benefit period,' with respect to any individual, means the *continuous* period of unemployment and disability beginning with the first day with respect to which the individual files a valid claim for unemployment compensation disability benefits. For the purposes of this part, two consecutive periods of disability *due to the same or related cause or condition* and separated by a period of not more than 14 days shall be considered as one disability benefit period." (Italics added.)

---

[1] Section 2653 now provides that the maximum benefit period shall be 39 times an individual's weekly benefit amount. (Stats. 1979, ch. 1051, § 2.)

■ Two pertinent intendments are manifested by the language of section 2608. First, if two disabilities are due to the same or related cause, the employee must recover from his first disability so that he is able to return to work for a period *longer* than 14 days. A second disability benefit period will arise if the employee thereafter suffers a relapse of his prior condition and is unable to continue working.

Second, an inference arises from section 2608 that once the first disability benefit period is interrupted, albeit for one day or one hour, by the employee's recovery to the point that he is able to return to work, a second disability benefit period may arise if the employee is thereafter disabled by a cause *unrelated* to the first disability. This inference comes from the phrase "*continuous* period of unemployment and disability" (italics added) contained in the first sentence of section 2608. Once the initial disability period is interrupted, i.e., has ended by the employee's recovery and ability to return to his job, a second disability period no longer can be deemed "continuous" with the first disability. This interpretation is supported by the board's own regulation which defines a "first claim" as "the claim initially filed . . . with respect to a *single uninterrupted* period of unemployment and disability . . ." (italics added, Cal. Admin. Code, tit. 22, § 2601-1, subd. (g)).

In short, the "not more than 14 days" requirement of the second sentence of Unemployment Insurance Code section 2608 has no application to unrelated causes of disability.

At this point, we pause to observe that pursuant to its authority to implement the legislative intendments by appropriate regulations the board has adopted a regulation which purports to interpret when a "continuous period of unemployment and disability" ends. California Administrative Code, title 22, section 2608-1 provides: "A continuous period of unemployment and disability ends:

"(a) When an individual returns to and is able to perform his regular or customary work for a period of more than fourteen (14) days or

"(b) In the case of an unemployed individual when his physician furnishes a statement giving the date, in his opinion, that the individual was able to perform his regular or customary work for a period of more than fourteen (14) days."

■ Section 2608-1 constitutes an unwarranted extension of Unemployment Insurance Code section 2608 insofar as it imposes a "more than 14 days" return to work requirement for termination of the disability benefit period where the second disability is unrelated to the first disability. As we have explained, it is only when the two consecutive periods of disability are due to the same or related cause or condition that a separation of more than 14 days between disability periods must occur for a second disability benefit period to arise. ■ "While the construction of a statute by officials charged with its administration, including their interpretation of the authority invested [*sic*] in them to implement and carry out its provisions, is entitled to great weight, nevertheless 'Whatever the force of administrative construction ... final responsibility for the interpretation of the law rests with the courts.' [Citation.] Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations. [Citations.]" (*Morris* v. *Williams* (1967) 67 Cal.2d 733 at p. 748 [63 Cal.Rptr. 689, 433 P.2d 697].)

■ We conclude that if respondent can prove his second disability commenced *after* his unemployment and disability from alcoholism ended—be it for one day or one hour—he would be entitled to establish a second disability benefit period for which he could file a second claim.

What happens if the two disability conditions overlap, i.e.—the second disability occurs before the end of the first disability period? In Precedent Disability Decision, *supra*, P-D No. 391, the claimant, a legal secretary, left her occupation due to a traumatic amputation of one of her fingers. She filed a claim for disability benefits for which payment began July 1, 1960. Her doctor eventually determined that her disability period would end on October 24, 1960, at which date she intended to return to work. On October 16, 1960, she fractured her left ankle. Her doctor estimated that she would recover from this injury on February 2, 1961. She filed a claim with respect to this second disability and benefits were paid through December 29, 1960, at which time her maximum amount was exhausted. She was denied further benefits under Unemployment Insurance Code section 2653 in spite of her contention that the two injuries were separate and distinct.

The appeals board denied her appeal: "In the present case, the evidence established that the claimant had not recovered from her first disability before she received her second disabling injury. Since she suf-

fered a continuous period of unemployment and disability, although from overlapping disabling conditions, only one 'disability benefit period' is involved under the express language of the statute. Therefore, we hold that the claimant was not entitled to establish a new disability benefit period in connection with her second disability because she had been continuously disabled since the establishment of her first disability benefit period. Having established but one disability benefit period, and exhausted her maximum award for that period, she was entitled to no further disability benefits." (Precedent Disability Decision, *supra*, P-D No. 391, pp. 3-4.) Although the board cited California Administrative Code, title 22, section 2601-1 in Precedent Disability Decision, *supra*, P-D No. 391, it was unnecessary to its holding since there was no ability to return to work gap between the two disabilities.

In Precedent Disability Decision (Feb. 2, 1970) P-D No. 68, the claimant, while receiving disability benefits as a result of a hysterectomy operation, fell and fractured her ankle. After exhausting the benefits payable under the first disability award, she filed a disability claim for the three-week period after the expiration of the award and before her recovery from the ankle injury. The board held the claimant had suffered but one continuous period of disability from the time of her operation and her return to work, although from overlapping disabling conditions. Since she had exhausted the award granted under Unemployment Insurance Code section 2653 for the single benefit period, she was ineligible for benefits for the additional three weeks. Again the board cited Unemployment Insurance Code section 2608 and California Administrative Code, title 22, section 2608-1 in support of its holding.

A nonprecedent decision discussed in Precedent Disability Decision, *supra*, P-D No. 391 was Disability Decision (Oct. 14, 1955) D No. 10. In this case, the claimant was disabled due to an acute ulcer. He established a disability benefit period effective August 24, 1954, and received weekly benefits for the following 26 weeks until his maximum award was exhausted. The claimant was advised by his doctor that he could return to work on or before March 15, 1955. On Saturday, March 5, 1955, *the claimant arranged with his former employer to return to work on March 7*. Upon leaving his employer's plant for the purpose of securing a formal release from his physician, the claimant was struck down by a bicycle and suffered a fractured zygoma for which he was hospitalized. The appeals board held that the department's regulation (Cal. Admin. Code, tit. 22, § 2608-1) would be invalid if it purported to

substitute the doctor's opinion for that of the department, the referee, or the appeals board. The board further held that the evidence established that the claimant had recovered from his first disability, ending his disability benefit period, before he suffered his second disability. Therefore, he was entitled to establish a new disability benefit period in connection with his second disability.

Thus, the board has consistently ruled that where a claimant suffers an unrelated disabling injury during the initial disability benefit period, i.e., before he is able to return to work because of his first disabling condition, a second disability benefit period does not arise regardless of the fact the second disabling injury continues beyond the date the claimant would have returned to work from his first disability.

The construction given to a statute by the administrative official charged with its enforcement or interpretation is entitled to great weight and will be followed unless clearly erroneous. (58 Cal.Jur.3d, Statutes, § 169, pp. 573-574.) ▮ We cannot say the board has erred in ruling that Unemployment Insurance Code section 2608 precludes compensation for a second disability occurring during a first disability benefit period regardless of whether the disabilities are causally related. The rationale apparently is that at the time of the second disability, the employee is neither working nor capable of returning to work. He is still unemployed by reason of his first disability. Therefore, his subsequent unemployment is merely a continuation of his initial unemployment and constitutes but one "continuous period of unemployment and disability," as provided for in section 2608. This interpretation is also consistent with California Administrative Code, title 22, section 2608-1 sans the 14-day requirement, "A continuous period of unemployment and disability ends ... when an individual returns to and is able to perform his regular or customary work ...."

▮ Except where the evidence is uncontradicted, the question whether a claimant's initial disability benefit period has ended before the second disability occurs is one of fact, first for the administrative law judge and the appeals board and thereafter for the trial court. (Code Civ. Proc., § 1094.5, subd. (c); *Interstate Brands* v. *Unemployment Ins. Appeals Bd., supra*, 26 Cal.3d at pp. 775-776 holding that a petitioner in mandamus from an Unemployment Insurance Appeals Board decision is entitled to the independent evaluation of the evidence by the trial judge.)

On appeal from the mandamus judgment, however, the appellate court determines only whether the findings and judgment are supported by substantial, credible and competent evidence and whether a different result is compelled as a matter of law. (*Cooperman v. Unemployment Ins. Appeals Bd.* (1975) 49 Cal.App.3d 1 [122 Cal.Rptr. 127].)

In the instant case, respondent's doctor, Dr. Barnard, estimated that respondent's alcoholism disability would end in January 1979. However, in connection with respondent's second disability claim, respondent stated that December 7, 1978, was "the first full day he was too sick to work." Dr. Fenderson first stated that respondent's second disability commenced on November 20, 1978; the doctor later estimated that appellant's disability had ended sufficiently to permit him to resume his regular work on "11-20-78—11-30-78, 12-14-78—2-1-78 [*sic*]."

Appellant acknowledges the doctor's later estimate "can only be interpreted to mean that the physician did not consider respondent to be disabled during the period December 1, 1978, to and including December 13, 1978." From this, appellant categorically asserts that respondent had two consecutive hernia and gallbladder disabilities separated by only 13 days; therefore, under the express wording of Unemployment Insurance Code section 2608 the two disabilities shall be considered as one disability period which commenced on November 20, 1978, at the time respondent was still disabled and receiving benefits on his first claim.

While appellant's argument appears to be superficially persuasive, it goes too far. It assumes that the command in section 2608 that only one disability benefit period arises when two consecutive but *related* disabilities are not separated by more than 14 days may be utilized by the department to cause an overlap of two consecutive but separate *unrelated* disabilities. Such an interpretation would be contrary to the liberal policy of construing the disability statutes in favor of the employee. (Unemp. Ins. Code, § 2601.)

Appellant's argument also fails to perceive that the trial court rationally could find that respondent's second disability commenced on December 7, 1978, rather than November 20. According to respondent, December 7 was the first day he was "too sick to work." Assuming Dr. Fenderson believed respondent's second disability commenced on November 20, the trial court is not bound by the doctor's opinion. As the board itself has noted, the date a disability commences is a question for

the trier of fact. (Disability Decision, *supra*, D No. 549, discussed in Precedent Disability Decision, *supra*, P-D No. 391.)

Appellant's argument merely illustrates the ambiguous and conflicting evidence before the ALJ as to when respondent's disability for alcoholism truly ended. Although the trial court understandably missed the bull's-eye when it reversed the board's decision because "there is no evidence that the two [disabilities] are related," it indeed did come close to the mark when it stated "Petitioner contends he hadn't had a drink of alcohol since May 2, 1978. Perhaps he was overpaid for his alcoholism disability, since payments were made into November. But that issue is not before the court."

As we have explained, the trial court was required to determine whether the second disability occurred before the termination of respondent's initial disability benefit period. Although the ALJ and the board found it had so terminated, thereby foreclosing a second disability benefit period, the respondent is entitled to the independent judgment of the trial court on this issue.

The matter is remanded to the trial court with directions to make findings on the following questions: (1) the date respondent's disability for alcoholism ended, i.e., the date he could have returned to work after his first disability; (2) the date of commencement of respondent's second disability, i.e., the date he was unable to work because of his gall bladder and hernia problems; and (3) whether respondent was able to work from December 1, 1978, through December 13, 1978. If the dates determined under (1) and (2) above do not overlap, or if respondent's first disability terminated during the time he was able to work, i.e., December 1 through December 13, respondent is entitled to compensation for a second disability benefit period, and the trial court should enter judgment to this effect. Otherwise, judgment should be entered for the appellant.

Zenovich, J., and LaRue, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.