[No. B161056. Second Dist., Div. Three. Mar. 30, 2004.]

CALIFORNIA INSURANCE GUARANTEE ASSOCIATION, Petitioner, v. WORKERS' COMPENSATION APPEALS BOARD and EMPLOYMENT DEVELOPMENT DEPARTMENT, Respondents.

COUNSEL

Guilford Steiner Sarvas & Carbonara and Richard E. Guilford for Petitioner.

Neil P. Sullivan and Vincent Bausano for Respondent Workers' Compensation Appeals Board.

Bill Lockyer, Attorney General, James Humes, Assistant Attorney General, John H. Sanders and Karen L. Fried, Deputy Attorneys General, for Respondent Employment Development Department.

OPINION

**ALDRICH, J.—**

## INTRODUCTION

After the Employment Development Department (the EDD) paid temporary unemployment compensation disability (UCD) benefits to a disabled worker, it filed a lien claim for reimbursement from the employer's insolvent workers' compensation carrier. California Insurance Guarantee Association (CIGA) assumed the insolvent carrier's obligations, but refused to satisfy the EDD's lien. CIGA argued it is only required to pay a "covered claim" and the EDD's lien is an obligation to a state that is excluded from the definition of "covered claims." (Ins. Code, § 1063.1, subd. (c)(4).) The Workers' Compensation Appeals Board (the Board) ruled against CIGA, reasoning that reimbursement of the EDD's lien is a payment to the particular disabled worker's account, not to the EDD.

CIGA petitioned this court for a writ of review (Lab. Code, § 5950) to determine the lawfulness of the Board's decision. We hold that the EDD's lien is an obligation to a state because the EDD is a department of the State of California. Hence, its lien claim is not a "covered claim" that CIGA is required to pay. (Ins. Code, § 1063.1, subd. (c)(4).) Accordingly, we reverse the Board's decision.

## FACTUAL AND PROCEDURAL BACKGROUND

Employee, Jeannie Karaiskos, was injured and filed a claim with her employer's workers' compensation insurer, California Compensation Insurance Company (CalComp). After CalComp denied the claim, Karaiskos applied to the EDD for temporary UCD benefits. The EDD paid Karaiskos $2,104.13 over the course of three months.

Karaiskos settled her claim with CalComp by compromise and release. Thereunder, CalComp agreed to pay Karaiskos $5,000 as workers' compensation benefits, "in addition to all sums which may have been paid previously." CalComp also undertook to adjust acknowledged liens. One such acknowledged lien was asserted by the EDD for the $2,104.13 in UCD benefits it had paid to Karaiskos. The compromise and release was judicially approved.

Thereafter, CalComp was declared insolvent and CIGA stepped in to administer CalComp's obligations. CIGA denied liability for the EDD's lien claim. CIGA argued it is only obligated to pay "covered claims" under Insurance Code section 1063.1, subdivision (c)(1), and because the EDD is a

state agency, its lien is excluded from the definition of "covered claims" in section 1063.1, subdivision (c)(4).

After the hearing, the Board ruled the EDD was entitled to reimbursement from CIGA. While acknowledging the EDD is a department of the State of California, the Board relied on the EDD's internal procedures manual to conclude the "EDD lien is, in essence, an 'obligation' to the injured worker and not to the 'state.' " CIGA filed its petition, and we issued a writ of review.

## CONTENTION

CIGA contends the Board erred in ruling it must satisfy the EDD's lien claim because the EDD is an agency of the State, and obligations to a state are excluded from the definition of a "covered claim." (Ins. Code, § 1063.1, subd. (c)(4).)

## DISCUSSION

1. *The standard of review and rules of statutory interpretation.*

■ Construction of a statute is a question of law which appellate courts review de novo. (*California Ins. Guarantee Assn. v. Liemsakul* (1987) 193 Cal.App.3d 433, 438 [238 Cal.Rptr. 346].)

"[W]e apply the usual rules of statutory interpretation. 'The fundamental rule . . . is to ascertain the intent of the Legislature in order to effectuate the purpose of the law. . . . In doing so, we first look to the words of the statute and try to give effect to the usual, ordinary import of the language, at the same time not rendering any language mere surplusage. The words must be construed in context and in light of the nature and obvious purpose of the statute where they appear. . . . The statute " 'must be given a reasonable and commonsense interpretation consistent with the apparent purpose and intention of the Legislature, practical rather than technical in nature, and which, when applied, will result in wise policy rather than mischief or absurdity . . . .' " ' [Citation.]" (*Klajic v. Castaic Lake Water Agency* (2001) 90 Cal.App.4th 987, 997 [109 Cal.Rptr.2d 454].)

" 'It is a settled principle in California law that "When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it." ' [Citation.]" (*California Ins. Guarantee Assn. v. Liemsakul, supra,* 193 Cal.App.3d at p. 439.)

### 2. *CIGA is not obligated to pay the EDD's lien.*

#### a. *Principles governing CIGA.*

"CIGA was created by legislation in 1969 [citation] to establish a fund from which insureds could obtain financial and legal assistance in the event their insurers become insolvent . . . ." (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 784 [244 Cal.Rptr. 655, 750 P.2d 297].) "All insurers transacting insurance business in California are involuntary members of CIGA, unless specifically exempted by statute. [Citations.]" (*Ibid.*)

" 'Although funded by a compulsory membership of insurance companies doing business in California, CIGA "was created to provide a *limited* form of protection for insureds and the public, not to provide a fund to protect insurance carriers." [Citations.] CIGA's role in guaranteeing workers' compensation claims is therefore *limited*: " ' ' "CIGA is not, and was *not created to act as, an ordinary insurance company.* [Citation.] It is a statutory entity that depends on the Guarantee Act for its existence and. for a definition of the scope of its powers, duties, and protections." [Citation.] "CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds." [Citation.] *"CIGA's duties are not co-extensive with the duties owed by the insolvent insurer under its policy."* [Citation.]' " ' " (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 358, 363 [5 Cal.Rptr.3d 127], italics added, quoting from *Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433, 1438 [129 Cal.Rptr.2d 53].)

#### b. *CIGA is not authorized to pay obligations to a state.*

"CIGA's authority and liability in discharging 'its statutorily circumscribed duties' are limited to paying the amount of 'covered claims.' [Citations.]" (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.*, supra, 112 Cal.App.4th at p. 363.) With certain exceptions, "covered claims" are "the obligations of an insolvent insurer" (Ins. Code, § 1063.1, subd. (c)(1)), including the obligation "to provide workers' compensation benefits under the workers' compensation law of this state." (Ins. Code, § 1063.1, subd. (c)(1)(vi).)[1]

---

[1] The parties argue at length about whether the EDD's lien claim is a "covered claim" under subdivision (c)(1)(vi) of Insurance Code section 1063.1 "to provide workers' compensation benefits under the workers' compensation law of this state." CIGA contends the EDD's UCD benefits are *not workers' compensation.* The Board and the EDD argue the benefits *are compensation.* We do not reach this question because we hold the EDD's lien is an obligation to a state and thus specifically excluded from the definition of "covered claim." (Ins. Code, § 1063.1, subd. (c)(4).)

CIGA is statutorily authorized to " ' "'deny a noncovered claim.' " [Citation.]' " (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.*, *supra*, 112 Cal.App.4th at p. 364.) Specifically *excluded* from the definition of "covered claims" is among others, "*any obligations to any state or to the federal government.*" (Ins. Code, § 1063.1, subd. (c)(4), italics added.)[2]

There is no dispute about what the governmental exclusion of Insurance Code section 1063.1, subdivision (c)(4) says: Claims requiring the payment of any obligation *to any state* are *not* "covered claims" for which CIGA is liable. "The logical and natural reading of the statute, then, is that covered claims do not include obligations to 'any state.' Period." (*County of Orange v. FST Sand & Gravel, Inc.* (1998) 63 Cal.App.4th 353, 357 [73 Cal.Rptr.2d 633].)

### 3. *The EDD's lien is an obligation to the State.*

The EDD's lien claim for UCD benefits mistakenly paid to a disabled worker constitutes an obligation to a state because (1) the EDD is a department of an agency of the State of California, and (2) the Unemployment Insurance Code contemplates reimbursement be made to the EDD's Unemployment Compensation Disability Fund in general, rather than to a particular disabled worker's account.

■ The EDD is part of the California state government. The EDD is a department of the California Labor and Workforce Development Agency. (Gov. Code, § 12813, subd. (e); Unemp. Ins. Code, § 301.) Among other duties, it maintains the Unemployment Compensation Disability Fund (the Disability Fund) from which UCD benefits are paid. (Unemp. Ins. Code, § 134.5; *Stevens v. Geduldig* (1986) 42 Cal.3d 24, 34 [227 Cal.Rptr. 405, 719 P.2d 1001].) The Disability Fund in turn is held as a segregated fund in the State Treasury. (Unemp. Ins. Code, §§ 3001 & 3002.) The logical, inescapable conclusion is that the EDD lien is an obligation to the state and is not a covered claim that CIGA is obligated to pay. (Ins. Code, § 1063.1, subd. (c)(4).) Indeed, in its decision, the Board acknowledged that the EDD is a department of a state agency.

■ Additionally, a lien claim for a UCD reimbursement is asserted by the EDD on its own behalf. A qualifying injured worker who has contributed to

---

[2] Insurance Code section 1063.1, subdivision (c)(4) states: " '*Covered claims' does not include* any obligations of the insolvent insurer arising out of any reinsurance contracts, nor any obligations incurred after the expiration date of the insurance policy or after the insurance policy has been replaced by the insured or canceled at the insured's request, or after the insurance policy has been canceled by the association as provided in this chapter, or after the insurance policy has been canceled by the liquidator, nor *any obligations to any state or to the federal government.*" (Italics added.)

the Disability Fund is entitled to payment of UCD benefits, unless the injury is covered by other benefits, such as workers' compensation insurance. (Unemp. Ins. Code, §§ 2629, 2629.1, subds. (a), (b) & (c).) An employee's receipt of UCD benefits does not relieve his or her employer or the employer's insurance carrier of liability to pay workers' compensation insurance. (Lab. Code, § 3752.) Hence, when an employee, who was paid UCD benefits, is later awarded workers' compensation for the same period of unemployment, the EDD may apply for a lien for reimbursement of those UCD payments. (Herlick, Cal. Workers' Compensation Handbook (22d ed. 2003) Liens, § 10.6, p. 10-29; Lab. Code, §§ 4903, subds. (f) & (g), 4904; Unemp. Ins. Code, §§ 2629.1, subds. (c)(4) & (e), 2712.) Once the requisites are met, the Board is required to allow the EDD's lien. (Lab. Code, § 4903; Herlick, *supra*, § 10.6, p. 10-29.) The EDD's allowed lien is then satisfied from either the employee's workers' compensation award (Lab. Code, §§ 4903, subd. (f), 4904, subd. (c); *Garcia v. Industrial Accident Com.* (1953) 41 Cal.2d 689, 695 [263 P.2d 8]), or the employer, or the workers' compensation insurance carrier that has assumed liability for reimbursement. (Unemp. Ins. Code, §§ 2629.1, subds. (e) & (f), 2712, 2712.5.) Thus, there can be no question that the lien CIGA is asked to reimburse here is one *filed by the EDD, not by an employee or an employer.*

Moreover, the specific statutes governing reimbursements of UCD liens direct that they be returned to the Disability Fund in general. Unemployment Insurance Code section 2629.1, subdivision (e), concerning workers' compensation insurance carriers' reimbursement of money, including interest and penalties, reads in part, "All funds received by the department pursuant to this section shall be deposited in the *Disability Fund.*" (Italics added.) Unemployment Insurance Code section 2742, governing the enforcement of collection of reimbursements, reads in part, "Amounts collected under this section shall be deposited *in the fund from which the overpayment was made.*" (Italics added.) The statutes designate many funds: in addition to the Disability Fund, there are the Unemployment Trust Fund, the Unemployment Administration Fund, and the Benefit Audit Fund. (Unemp. Ins. Code, §§ 134.5, 142, & 1381.) The Legislature also enacted a statute focusing more specifically on "keeping a record of the payments to and the disbursements from the Disability Fund with respect to the payment of benefits . . . ." (Unemp. Ins. Code, § 3012, subd. (b).) That statute does not require the maintenance of individual accounts for each disabled worker. In short, the Unemployment Insurance Code talks in terms of funds and requires that reimbursements are returned to the *Disability Fund* generally. Therefore, the EDD is the lien claimant in its own right, seeking reimbursement as trustee on behalf of the Disability Fund for the benefit of all bona fide claimants for money mistakenly paid out. Because reimbursements of UCD benefits are made to the State's Disability Fund, an EDD lien claim for mistakenly paid

UCD benefits is an obligation to the State and pursuant to Insurance Code section 1063.1, subdivision (c)(4), is not a covered claim that CIGA is obligated to pay.

### 4. *The Board's arguments to the contrary are unavailing.*

■ The Board argues unpersuasively that a UCD lien is not an obligation to the EDD because, although the benefits are returned to the Disability Fund, that Fund is a species of trust, that can be used only for payment of disability benefits. (*Stevens v. Geduldig, supra,* 42 Cal.3d at p. 34.) The fact that the EDD administers the Disability Fund as a trustee does not convert a particular lien into a payment to a specific worker. A lien claim to reimburse the Disability Fund remains an obligation to the State because the payment is returned to the Disability Fund generally, which is maintained by the EDD and the State Treasurer for all employed and disabled workers in California. (*Stevens, supra,* 42 Cal.3d 24.) Thus, when filing a lien, the EDD is not seeking reimbursement for a specific employee.

To avoid this inevitable result, the EDD and the Board looked behind the statutes to the EDD's administration of the Disability Fund. Based on its own internal procedures, the EDD contended that satisfaction of an EDD lien was not a payment to a state, but to a particular employee, because reimbursement of a UCD benefit is restored to the worker's "claim balance" from which future UCD benefits may be paid. The Board agreed, relying on the EDD's Determinations and Procedures Manual (DPM) as evidence of how the Disability Fund is managed.

Section 709 of the DPM delineates how third party reimbursements to the EDD of money mistakenly paid to a disabled worker are allocated.[3] According to the DPM, when an individual files a claim for benefits, a "claim balance" is established. As UCD benefits are paid out, the worker's personal "claim balance" is reduced. The DPM then provides that, when a workers' compensation carrier reimburses a UCD lien, under certain circumstances the sum is restored to the particular employee's UCD "claim balance." (DPM, § 709.3.) When "the claim balance has been restored," the employee is again *"potentially* eligible for additional benefits." (DPM, § 709.10(2)(e) & (4)(e), italics added.) Based on these internal procedures, the EDD argued and the Board agreed that "CIGA's duty to reimburse EDD liens . . . may properly be described as an obligation to the injured worker, not to EDD." Reliance on the DPM was error.

---

[3] CIGA argues the Board denied it due process by refusing to allow it discovery into other aspects of the DPM. As the result of our conclusion that the Board incorrectly relied on the DPM, we need not address this issue.

As demonstrated above, the unemployment disability statutory scheme shows that recovery of a lien claim by the EDD does not "restore" a particular disabled worker's eligibility for additional benefits. Nowhere do the statutes discuss "claim balances."[4]

More important, the DPM does not have the force or sanction of statute, decisional law, or even regulation. It is merely the internal guidebook of EDD procedures. While the EDD has the authority to implement legislative intendments by appropriate regulations (*Bilyeu v. Unemployment Ins. Appeals Bd.* (1982) 130 Cal.App.3d 657, 663 [181 Cal.Rptr. 837]), it has promulgated no regulation on the subject of these kinds of reimbursements. The DPM may be a useful bookkeeping method for monitoring and managing a fungible, fluid fund. Yet, it constitutes nothing more than an accounting protocol. We cannot convert a bookkeeping procedure that is repeatedly modified into legal authority for the proposition that the reimbursement of a lien belongs to a particular employee and not to the State's Disability Fund for the benefit of all employees. We give great weight to an administrative agency's construction of its own administrative regulations if there appears to be a basis for the construction. (*Id.* at p. 666; *Campbell Industries v. State Bd. of Equalization* (1985) 167 Cal.App.3d 863, 868 [213 Cal.Rptr. 533].) However, here, given the complete lack of administrative regulation, there is no basis on which to conclude, as a matter of law, that the reimbursement of a mistaken UCD payment is allocated to the specific employee rather than to the Disability Fund in general.

Furthermore, contrary to the inferences drawn from DPM's procedures, according to the statutes, reimbursements to the EDD of UCD payments have no effect on the availability of benefits for a particular employee's subsequent disabilities. A particular disabled worker's claim has a corresponding "disability base period," "weekly benefit amount," and "maximum amount payable," all of which are defined and limited by law. (Unemp. Ins. Code, §§ 2610, 2653 & 2655.) The disabled employee is entitled to no more than the maximum amount payable for each disability. Yet, each time a worker has a new qualifying disability, a new base period is established without reference to any previously opened, exhausted, or diminished benefit periods related to different disabilities. (*Bilyeu v. Unemployment Ins. Appeals Bd., supra,* 130 Cal.App.3d at p. 663.) The statutes indicate the right to benefits for one disability is unrelated to the right to and amount of benefits

---

[4] The phrase "claim balance" appears to be nothing more than entries in the EDD's computer system established for purposes of monitoring reimbursements from third parties, i.e., from the worker compensation carriers.

for a second, independent disability, and is unrelated to the EDD's internal accounting procedures for handling repayments of UCD liens. Thus, by relying on the DPM to rule that reimbursement of an EDD lien is a payment to the particular disabled worker rather than to the EDD, the Board creates a legal fiction.[5]

Even were there a situation in which reimbursement of a lien might "potentially" render that particular employee eligible for additional benefits for the same disability, as the EDD posits, the result here does not change. While there may be circumstances under which the reimbursement of UCD benefits restores a particular employee's eligibility for additional benefits, that is not the usual case. To characterize the EDD's lien as an obligation to the State depending on whether the EDD's receipt of reimbursements affects a particular worker's entitlement to additional benefits creates absurd results. Such a conclusion is tantamount to holding that satisfaction of the EDD's lien is or is not a payment to the State, depending on the facts of each case.

This case presents a good example of how the satisfaction of an EDD lien would not make the disabled employee eligible for additional benefits. Even if CIGA were to satisfy the EDD's lien, Karaiskos has no right to any additional UCD benefits related to the injury she has already suffered. By compromise and release, she has been fully reimbursed and is entitled to no more money for this injury. The EDD's lien was allowed because its payment was covered by other compensation. (Lab. Code, §§ 4903, 4904; Unemp. Ins. Code, §§ 2629.1, subd. (e), 2712.) If Karaiskos suffers a new disability covered by UCD benefits, a new disability benefit period will start for her, regardless of whether the EDD's lien in this case is satisfied. (*Bilyeu v. Unemployment Ins. Appeals Bd., supra*, 130 Cal.App.3d at p. 663.) In short, Karaiskos will never be entitled to use the "restored" money. Hence, the EDD is not seeking reimbursement on *Karaiskos's behalf*; it is pressing its lien on behalf of the Disability Fund in general.

We reject the Board's public policy rationale for ignoring the clear import of Insurance Code section 1063.1, subdivision (c)(4). The Board argues, if CIGA is not required to reimburse the EDD's lien claim, then "the monies in the UCD Fund will be depleted at a faster rate, which could result in either an increase in the rate of employee wage contributions to the Fund, an increase in the waiting period for UCD benefits, or a decrease in the rate of UCD benefits." But, CIGA makes the same argument about its funds if it is ordered to pay the EDD's lien.

---

[5] The Board acknowledged this result when it stated the employee "may never make a claim based on the restored benefits."

"The statute thus boils down to the Legislature's decision as to who should bear a loss as between [the State] and CIGA." (*County of Orange v. FST Sand & Gravel, Inc., supra,* 63 Cal.App.4th at p. 361.) "Crafting statutes to conform with policy considerations is a job for the Legislature, not the courts; our role is to interpret statutes, not to write them. [Citations.]" (*California Ins. Guarantee Assn. v. Argonaut Ins. Co.* (1991) 227 Cal.App.3d 624, 633–634 [278 Cal.Rptr. 23].) As written, Insurance Code section 1063.1 does not authorize CIGA to reimburse the EDD for UCD benefits the EDD paid to Karaiskos. Subdivision (c)(4) of that section plainly and unambiguously excludes from the definition of "covered claims," obligations to the State. While denying payment to the State under these circumstances may increase the EDD's financial burden, this fact does not justify ignoring the statute's clear language. (*Id.* at p. 636.) Yet, allowing recovery from CIGA could result in greater insurance costs to the involuntary members of CIGA, which costs may also be passed on in part to the insured public. (*Ibid.*) "The Legislature has balanced these competing concerns for protecting the insured public in the creation and statutory duties of CIGA. We shall not take it upon ourselves to change the balance." (*Ibid.*)

"The acid test of statutory interpretation based on principles of statutory construction is always whether the interpretation yields an absurd result." (*County of Orange v. FST Sand & Gravel, Inc., supra,* 63 Cal.App.4th at p. 360.) The clear, unambiguous, and unavoidable conclusion is that the EDD's lien for mistakenly paid UCD benefits is an obligation to a state and is thus not a "covered claim" that CIGA is obligated to pay. (Ins. Code, § 1063.1, subd. (c)(4).) It defies logic and produces a ludicrous result to conclude that a payment to a department of the State is not a payment to a state.[6]

---

[6] The Board also relied on *Burrow v. Pike* (1987) 190 Cal.App.3d 384 [235 Cal.Rptr. 408], and the parties argue whether we should rely on *California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra,* 27 Cal.App.4th 624, which disagreed with *Burrow.* We appreciate the controversy created by these two cases. However, we need not jump into the fray. *Burrow* is inapposite. There, the State asserted its lien claim against its employee's recovery from the third party tortfeasor. The State did not seek to assert its lien claim directly against the third party tortfeasor or against the tortfeasor's workers' compensation insurer. Apart from the fact *Burrow* is the only published case that mentions the governmental exclusion in Insurance Code section 1063.1, subdivision (c)(4), the focus of the *Burrow* decision is on the exclusion from coverage involving subrogation. (*Burrow, supra,* at p. 397, citing Ins. Code, § 1063.1, subd. (c)(5).)

*California Ins. Guarantee Assn. v. Argonaut Ins. Co., supra,* 27 Cal.App.4th 624, does not involve a claim filed by a state agency or the exception in Insurance Code section 1063.1, subdivision (c)(4).

## DISPOSITION

The decision of the Workers' Compensation Appeals Board is reversed. The matter is remanded to the Workers' Compensation Appeals Board for further proceedings in accordance with this opinion.

Klein, P. J., and Croskey, J., concurred.

The petition of real party in interest Employment Development Department for review by the Supreme Court was denied June 9, 2004.