[No. B257480. Second Dist., Div. Three. June 21, 2016.]

WANKYU CHOI et al., Plaintiffs and Respondents;
MARY RESTAINO et al., Plaintiffs and Appellants, v.
MARIO BADESCU SKIN CARE, INC., et al., Defendants and
Respondents.

294

## Counsel

The C2 Law Group, Erica E. Hayward; The Rudd Law Firm, Christopher L. Rudd; Whitfield Bryson & Mason, Gary E. Mason and Esfand Y. Nafisi for Plaintiffs and Appellants Mary Restaino, Geoffrey Yu, Theresa Stern Valentic, Betty Huang and Zoe Herold.

Law Offices of Ronald A. Marron, Ronald A. Marron, Skye Resendes; and C. Benjamin Nutley for Plaintiff and Appellant Donna McLaren.

Law Office of Young W. Ryu, W. RyuYoung; Law Offices of Gerald S. Ohn and Gerald S. Ohn for Plaintiffs and Respondents.

Tucker Ellis, Ronie M. Schmelz and Rebecca A. Lefler for Defendants and Respondents.

## Opinion

**ALDRICH, J.—**

### INTRODUCTION

Jae K. Lee and Wankyu Choi sued Mario Badescu Skin Care, Inc., and Mario Badescu for marketing and labeling two face creams without disclosing all of the ingredients. Plaintiffs sought economic damages and equitable relief on behalf of themselves and a nationwide class of face cream purchasers. Before the class was certified, defendants agreed to settle the action. Nine class members, who timely objected, appeal raising numerous contentions. In the unpublished portion of this opinion, we hold that the objectors have not demonstrated error. In the published portion of this opinion, we hold that the one-time publication of the notice of settlement did not violate the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.; CLRA). Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The complaint*

In December 2012, the Korean Ministry of Food and Drug Safety suspended the sales of defendants' Healing Cream after testing revealed the product contained two unlabeled corticosteroids, hydrocortisone and triamcinolone acetonide. The recall advised consumers to cease using the cream and warned that long-term use of steroids could lead to skin atrophy and enlarged capillaries.

Plaintiffs Lee and Choi (together plaintiffs, the named plaintiffs, or class representatives) purchased defendants' Healing Cream and used it.[1] Their attorneys had the purchased creams tested by an independent laboratory and discovered the presence of 2610 µg/g of hydrocortisone and 1899 µg/g of triamcinolone acetonide. The named plaintiffs filed this consumer class action against defendants on behalf of all persons residing in the United States who purchased defendants' Healing Cream.

The operative complaint alleged that defendants represented through marketing, advertising, labeling, and other forms of promotion, that the Healing Cream prevented acne scars and speeded up the healing process for irritated or acne-erupted skin,[2] but "failed to disclose that [defendants'] Healing Cream products contain levels of Hydrocortisone and Triamcinolone Acetonide, which are steroid substances with serious side effects. [¶] . . . [¶] Triamcinolone is a synthetic **corticosteroid** used to treat various skin conditions. . . . Triamcinolone Acetonide . . . is a **DOCTOR'S PRESCRIPTION ONLY** medicated cream . . . ." The complaint alleged that the class overpaid for the product because its value was diminished at the time it was sold to consumers. Had the class members been aware that the cream contained hydrocortisone and triamcinolone acetonide, they would not have purchased the product, would have paid less for it, or would have purchased another competing product.

The complaint asserted causes of action for violation of the CLRA; fraudulent concealment; false advertising in violation of Business and Professions Code section 17500, all of which violated Business and Professions Code section 17200; breach of express and implied warranties;

---

[1] The two named plaintiffs attached declarations to their response to objections, in which they stated they "personally used Mario Badescu Healing Cream" after receiving it.

[2] Plaintiffs alleged that the Healing Cream's label listed the ingredients as " 'Balsam (Myroxylon Pereirae Resin) Peru, Polyglycerlmenthacrylate (and) Propylene Glycol, Herbal Extract, Bismuth Subgallate,' " but that "[d]efendants did not disclose that the Healing Cream contained **STEROIDS**."

and false and misleading advertisement in violation of the Magnuson-Moss Warranty—Federal Trade Commission Improvement Act (15 U.S.C. § 2301 et seq.). Plaintiffs sought an order certifying a nationwide class and a California subclass, and sought injunctive relief, restitution, monetary damages, punitive damages, and attorney fees. Defendants stopped selling the creams after the complaint was filed.

[[2. *The litigation*]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3. *The settlement*

The parties underwent mediation and conducted settlement discussions that continued after mediation. The parties reached a settlement of the action on behalf of the class (the settlement agreement). On November 20, 2013, they moved the trial court for preliminary certification of the class and approval of the stipulation of settlement.

[[a., b.]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

4. *The notification*

The trial court provisionally certified the class for settlement purposes and preliminarily approved the settlement. The court modified the proposed notice methodology to require that e-mail notices include hyperlinks to the long form notice and the claim form. The court approved appointment of the settlement administrator agreed to by the parties, and ordered that notice of pendency and settlement be given to the proposed class according to the agreement.

After notice as approved by the trial court was sent, the named plaintiffs moved for final approval of the class settlement. Plaintiffs' attorney declared that based on available information, approximately 36,954 class members purchased about 65,495 units of the creams through defendants' website or at their New York spa during the class period, indicating a purchasing pattern under which each member bought 1.8 units of the cream. The settlement administrator received from defendants the names and addresses or e-mails for class members who purchased products through defendants' website or at

---

*See footnote, *ante*, page 292.

their spa. After culling duplicates, the settlement administrator identified 33,331 valid e-mail addresses to which it sent summary notices, and 3,623 valid street addresses to which it sent long form notices, pursuant to the trial court's preliminary approval order. The settlement administrator sent 32,092 reminder notices in March 2014. After tracking 248 addressees whose mail was undeliverable, the administrator sent new notices by April 2014. The administrator established a post-office box address and a website to answer questions and provide additional information about the settlement.

In addition to the website and spa sales, another approximately 91,000 units of the creams were shipped by defendants to retailers around the country. On January 26, 2014, the settlement administrator published the summary notice in Parade Magazine, which has a circulation of more than 32 million and is distributed to 600 newspapers nationwide. The administrator also activated a toll-free telephone number.

As of April 29, 2014, two months after the deadline for opting out of the class, the parties estimated the class size to be around 86,000 members of which 42 requested exclusion, nine filed objections to the settlement, and two others objected but filed nothing with the court. All but three objectors are parties to this appeal.[3]

Of the 11,942 submitted claim forms, the settlement administrator determined that 11,620 were valid. This yielded a claim rate of nearly 14 percent, or almost three times the typical consumer class action claim-rate of 5 percent, according to the parties. The total estimated value of the claims was $895,365. Coupled with the costs charged by the settlement administrator and attorney fees, the total economic value of the settlement, plaintiffs asserted, was $2,413,338.40.

### 5. *The objections*

Two groups filed objections to the preliminary approval of the class and of the settlement agreement.

[[a. *The Restaino Objectors*]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[3] Dawn Weaver filed a timely objection in the trial court and an appeal from the order approving the settlement class. However, at her request, we dismissed Weaver's appeal on June 25, 2015.

*See footnote, *ante*, page 292.

### b. *The McLaren Objectors*

Donna McLaren, Rebecca McDonald, and Howard Clark (the McLaren Objectors) contended that the notice was deficient and precluded assumption of jurisdiction over the absent class members because notice was published in Parade Magazine only a quarter of the times required by the CLRA. (Civ. Code, § 1781, subd. (d).)

[[ ]]*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### 6. *The trial court's ruling*

In May 2014, the trial court entered a final order approving the class and the stipulation of settlement.

[[ ]]*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## [[CONTENTIONS]]*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

## DISCUSSION

[[1.–3.a.]]*

· · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · · ·

### b. *Notice*

(i) *The method of giving notice did not violate the CLRA.*

The McLaren Objectors contend that the method of giving notice was constitutionally infirm because the court was not free to disregard the notice requirement in CLRA, Civil Code section 1781, subdivision (d). They do not

---

*See footnote, *ante*, page 292.

challenge the selection of Parade Magazine as an appropriate publication. Instead, they argue that the court's error lay in allowing publication there only once.

■ "We exercise our independent judgment in the review of pure questions of law, such as the interpretation of statutes, and application of a statute to undisputed facts. [Citations.]" (*Powerhouse Motorsports Group, Inc. v. Yamaha Motor Corp., U.S.A.* (2013) 221 Cal.App.4th 867, 877 [164 Cal.Rptr.3d 811].) " ' "It is a settled principle in California law that 'When statutory language is . . . clear and unambiguous there is no need for construction, and courts should not indulge in it.' " [Citation.]' [Citation.]" (*California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2004) 117 Cal.App.4th 350, 355 [12 Cal.Rptr.3d 12].)

Subdivision (d) of section 1781 of the Civil Code reads, "If the action is permitted as a class action, the court may direct either party to notify each member of the class of the action. The party required to serve notice *may*, with the consent of the court, if personal notification is unreasonably expensive or it appears that all members of the class cannot be notified personally, give notice as prescribed herein by publication in accordance with Section 6064 of the Government Code in a newspaper of general circulation in the county in which the transaction occurred." (Italics added.) Section 6064 of the Government Code, in turn, reads in part that "Publication of notice pursuant to this section *shall* be once a week for four successive weeks." (Italics added.)

■ Clearly, subdivision (d) of section 1781 of the Civil Code does not apply to this case involving a *settlement* class. By its terms, subdivision (d) concerns notice when a class action is "permitted"—i.e., when a court certifies a class for adjudication. To "permit" means "[t]o suffer, allow, consent, let; to give leave or license; to acquiesce, by failure to prevent, or to expressly assent or agree to the doing of an act." (Black's Law Dict. (6th ed. 1990) p. 1140, col. 1; accord, Webster's 3d New Internat. Dict. (1971) p. 1683, col. 3.)

■ Notice of a proposed class action *settlement*, in contrast, is governed by subdivision (f) of section 1781 of the Civil Code, which reads, "[a] class action *shall not be* dismissed, *settled*, or compromised without the approval of the court, and notice of the proposed dismissal, settlement, or compromise *shall* be given in such manner as the court directs to each member who was given notice pursuant to subdivision (d) and did not request exclusion." (Italics added; cf. *Rebney v. Wells Fargo Bank* (1990) 220 Cal.App.3d 1117, 1138, fn. 6 [269 Cal.Rptr. 844] [noting in dicta that Civ. Code, § 1781, subd. (d) applies when a class action is permitted, whereas subd. (f) governs

notice of a proposed settlement].) Unlike subdivision (d) of section 1781 of the Civil Code, subdivision (f) mandates that notice of a settlement class be given "as the court directs," thus granting the trial court discretion to fashion notice of a settlement class, provided the court orders that notice be sent "to each member who was given notice pursuant to subdivision (d)." (Civ. Code, § 1781, subd. (f).) As notice was not given pursuant to subdivision (d) here, the court had " 'virtually complete discretion as to the manner of giving notice to class members.' " (*7-Eleven Owners for Fair Franchising v. Southland Corp.* (2000) 85 Cal.App.4th 1135, 1164 [102 Cal.Rptr.2d 777] (*7-Eleven Owners*); see *Gainey v. Occidental Land Research* (1986) 186 Cal.App.3d 1051, 1057 [231 Cal.Rptr. 249].)

■ Furthermore, it is infeasible to comply with the requirement in Civil Code section 1781, subdivision (d) to give notice in "a newspaper of general circulation in the county in which the transaction occurred." Determining in which counties around the United States sales of the creams occurred in this case would be impossible. Civil Code section 1781 does not appear to govern nationwide consumer class actions. The McLaren Objectors have not demonstrated that Civil Code section 1781, subdivision (d) applies to require notice four times to a nationwide settlement class, particularly where other class claims were alleged and all of the remedies were obtained under causes of action other than the CLRA.

■ California has abundant authority providing guidance to trial courts when fashioning notices of class action settlements. (See generally Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2015) ¶ 14:117 et seq., p. 14-86 et seq.; Cal. Rules of Court, rule 3.766; see also *7-Eleven Owners, supra*, 85 Cal.App.4th at p. 1164; accord, *Cellphone Termination Fee Cases* (2010) 186 Cal.App.4th 1380, 1390–1393 [113 Cal.Rptr.3d 510].) The McLaren Objectors do not challenge the constitutionality of the notice method for any of the other causes of action alleged in the complaint. Therefore, because Civil Code section 1781, subdivision (d) is inapplicable, the McLaren Objectors have not demonstrated that notice was rendered constitutionally infirm merely because publication was made once in Parade Magazine rather than four times.

[[(ii) *The content of the notice was not deficient.*]]*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 292.

## DISPOSITION

The judgment is affirmed. Appellants to bear costs on appeal.

Edmon, P. J., and Lavin, J., concurred.